## 32744. MOORE v. THE STATE.

UNDERCOFLER, Presiding Justice.

Carzell Moore was indicted on February 15, 1977, in the Superior Court of Monroe County, Georgia, for the rape and murder of Teresa Carol Allen on December 12, 1976. Following a trial by jury in which the jury found statutory aggravating circumstances the appellant was sentenced to death for both offenses. He is before this court on appeal and for mandatory review of the death sentences imposed.

### I. Summary of the Evidence

The state presented evidence from which the jury was justified in finding the following:

At approximately 3 p.m. on December 12, 1976, 18-year-old Teresa Allen arrived at her place of part-time employment, the Majik Market in Cochran, Georgia. Shortly before 7 p.m. the store was found to be empty. The cash register and the safe were open and empty and Miss Allen's automobile, a late model Pontiac Grand Prix, was

missing. The Majik Market area supervisor determined that $466 was missing from the store.

On December 14, 1976, Miss Allen's body was discovered lying in a wooded grassy area just off a dirt road near Highway 41 in Monroe County, Georgia. Footprints, two 30.06 cartridge hulls, a 30.06 metal jacket of a bullet, parts of Miss Allen's flesh, teeth and bone, tire tracks and a nylon stocking were found near the body. The cause of her death was determined to be loss of blood from bullet wounds.

Examination of the body disclosed bruising on the inside of one thigh, a laceration of the vagina, and blood and mucous like matter in the vaginal canal. A pathologist testified that the wounds in the abdomen, arms and face were caused by a high-powered missile, and that the location and nature of the wounds were consistent with the theory that Miss Allen had her arms crossed across her stomach and was shot with a high-powered bullet which passed through both arms and the abdomen. Miss Allen was also shot by a high-powered bullet entering the left side of the neck, penetrating the lower face and exiting the right side of the head.

An acquaintance of the appellant, Johnny Johnson, was with the appellant and another friend at the appellant's home on Thursday just prior to Sunday, December 12, 1976. The appellant asked Johnson and the friend, "Do you know a place we can hit?" The word "hit" was understood to mean rob. The appellant stated that he "had the material to hit a place with." He explained that he had a "high powered rifle and a couple of shells to go with it." Mr. Johnson and the friend told the appellant that they did not know of a place to rob.

In the early evening of the day of the robbery the appellant and Roosevelt Green were let off at the appellant's house. The appellant's house was four blocks from the location of the Majik Market. Green was wearing high-heeled shoes.

In early January, 1977, Thomas Pasby accompanied the appellant to check out an automobile that the appellant intended to purchase. At that time, the appellant asked Pasby how Pasby felt about killing when Pasby was in Viet Nam. During their discussion, the

appellant told Pasby, "Well, I killed somebody, too," and then related the following: The appellant said that he and Green went to the Majik Market in Cochran. The appellant told Green to go in and take Miss Allen to the meat counter in order to attract her attention so that the appellant could come in the front of the store with a rifle. This was done, and Green and the appellant robbed the Majik Market. When they left the store, they took Miss Allen with them forcibly. They left in her car with the appellant driving. Shortly after leaving the store Green turned to Miss Allen and said, "Bitch, take off your clothes." Miss Allen told Green that she was a virgin and pleaded with him not to rape her. Green raped her anyway. Green then changed places with the appellant, and Green drove. The appellant, Carzell Moore, then raped Miss Allen. After driving further, the appellant told Green to stop the car. The appellant then told Miss Allen to get out. Miss Allen and the appellant then got out of the car. The appellant told Green to drive to a gas station to get gas for the car. After Green left, Miss Allen begged the appellant not to kill her. Miss Allen crossed her arms over her stomach to protect herself. The appellant shot her in the abdomen with the rifle. He then shot her in the face. The appellant stated that he shot Miss Allen in the face in an attempt to disfigure her so as to make it difficult to identify her. When Green returned, the two of them picked up Miss Allen and threw her into the bushes. The appellant told Pasby that one of her hands was so mangled by the rifle blast that he thought it was going to fall off.

One of Miss Allen's hands was almost severed from her body. The attendant at a nearby gas station recalled selling gas for an automobile like that of the victim with a Georgia county tag that showed only the letters RENS from Laurens. The tag on the victim's car was in a similar condition. Green later arrived in South Carolina in possession of the car with a large amount of change and a roll of bills, asked a friend to burn the car for him (which request the friend refused), and traded the 30.06 rifle for a .25 caliber automatic.

A Cochran florist testified the rifle was stolen from him about the time and in the vicinity the appellant was

seen with it.

When appellant was informed while in jail that Green had been arrested with the Allen car in South Carolina he stated, "Damn, I told Green to get rid of that car and that rifle." Later, the appellant stated to Pasby again, "You know, Green was supposed to have gotten rid of that rifle and the car."

A plaster cast of a footprint found near Miss Allen's body was of similar size and impression as a flat Hushpuppy shoe taken from the appellant's room. Tire tracks found near her body were similar in size and tread design to the tires found on Miss Allen's car.

There was other forensic evidence that circumstantially connected the appellant to the crimes.

The appellant testified in his own behalf that he met Green in an Alabama prison in 1975. On December 11, 1976, he saw Green in Cochran looking for him. Green, out on escape, was using the name Jerome Miller. The appellant loaned Green some of his clothes and shoes. They went to various places on December 11, and on the day of the robbery, they went to Rosa Crawford's house to watch the football game. Rosa's parents drove the appellant and Green to the appellant's house, where Green borrowed the Hushpuppy shoes from the appellant. Green left and the appellant began drinking, watched Sonny and Cher, and then became nauseated and passed out. He awoke late that night, and went outside. The cafe was closed so he just sat under a tree and smoked. A friend came along and they smoked together. Then he went home and went to sleep. He denied making the statement to Pasby about robbing the Majik Market, raping Teresa Allen, and killing her. He denied getting a 30.06 rifle. He denied Johnson's testimony concerning the appellant's asking about a place to rob. He denied Johnson's testimony concerning his statements about the rifle. He denied that he made the statement to Pasby while in jail. The appellant explained the forensic evidence by stating that he had skinned himself while having intercourse with his girl friend. He also testified that Green exchanged his high platform shoes for appellant's Hushpuppys prior to the evening of the robbery.

In rebuttal, the state presented testimony that when

Green visited in South Carolina the morning following the robbery he was wearing high-heeled shoes and not Hushpuppys.

The evidence will be developed more fully if necessary to address the enumerations of error.

## II. Enumerations of Error

1. In Enumeration 1, the appellant alleges the evidence is insufficient to support the verdict.

Without any narration of the evidence other than that set forth in the summary of the evidence above we conclude that there was sufficient evidence to support the verdict of the jury. *Harris v. State,* 234 Ga. 871 (218 SE2d 583) (1975); *Harris v. State,* 236 Ga. 766 (225 SE2d 263) (1976); *Myers v. State,* 236 Ga. 677 (225 SE2d 53) (1976).

Enumeration 1 is without merit.

2. In Enumeration 2, the appellant alleges the court erred in overruling defendant's motion to suppress as amended.

In support of this motion, the appellant alleges that the affidavit of the sheriff and the testimony before the issuing magistrate were insufficient to support a finding of probable cause for the issuance of a search warrant.

The sheriff's affidavit to the superior court judge who issued the warrant set forth matter that can be summarized as follows:

(1) Footprints at the scene matched with Hushpuppy shoes of the appellant.

(2) A bath towel observed in appellant's bedroom matched one found near the murder scene containing forensic evidence.

(3) An informant stated to the sheriff that Carzell Moore had stated that he had a 30.06 rifle and some ammunition and that he (the appellant) was looking for a place to "hit."

(4) Roosevelt Green, a companion of appellant until sometime the day of the offenses, was established to have been in possession of the victim's automobile and the murder weapon.

(5) The murder weapon was a high powered rifle.

(6) Roosevelt Green's clothes were also observed in the appellant's bedroom.

There was also testimony before the judge issuing the

warrant by law enforcement officers that included the fact that a filling station operator observed two persons in the victim's car shortly after the robbery.

Code Ann. § 27-303 provides that a search warrant may be issued upon written complaint of the appropriate officer "which states facts sufficient to show probable cause that a crime . . . has been committed, and which particularly describes the place or person, or both, to be searched and things to be seized." The warrant was not issued until January 14, 1977, after the robbery and death consistent with murder had been discovered. The officers had already observed evidence they believed would be produced by search of the premises in question. Under these circumstances, the test of the statute, the prior decisions of the Supreme Court of the United States, viz., Berger v. New York, 388 U. S. 41 (1969), Brinegar v. United States, 338 U. S. 160 (1949) and the decisions of this court have been met. *Ward v. State,* 234 Ga. 882 (218 SE2d 591) (1975), and *Strauss v. Stynchcombe,* 224 Ga. 859, 865 (165 SE2d 302) (1968).

Enumeration 2 is without merit.

3. In Enumeration 3, the appellant alleges the court erred in overruling defendant's motion to require the government to disclose to whom immunity had been granted or promises made.

Although the appellant alleges in his brief that "the State had information in its possession which indicated that Thomas Pasby had been indicted or charged with other offenses, and had made his statement concerning defendant's confession after promises had been made to him" he offers no proof in support thereof and at trial the district attorney of the Flint Judicial Circuit, the circuit in which the case was tried, stated to the defense attorney that he made no promises of immunity nor did he grant any immunity to any witnesses in the case. Additionally, he stated that he was unaware of any information from any source to the effect that anyone had granted immunity to any witness in the case. The district attorney stated that he had been notified by Sheriff Coley of Bleckley County, where Pasby was being confined for a crime unrelated to the present case, that Pasby had not been granted immunity by anyone in Bleckley County.

This enumeration is without basis or merit.

4. In Enumeration 4, the appellant alleges the court erred in overruling defendant's general demurrer to the indictment.

Herein the appellant alleges the death penalty statute is unconstitutional in that the district attorney has unwarranted discretion as to whether or not to request the death penalty in a capital case and therefore the statute is likely to have the result of being applied arbitrarily and capriciously in violation of the Fifth, Eighth, and Fourteenth Amendments.

The constitutionality of the Georgia Capital Punishment Statute has been attacked before this court and the Supreme Court of the United States and both have upheld the constitutionality. *Coley v. State,* 231 Ga. 829 (204 SE2d 612) (1974); *Young v. State,* 237 Ga. 852, 856 (230 SE2d 287) (1976); Gregg v. Georgia, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976).

In Gregg the Supreme Court of the United States addressed this argument as follows: "The Petitioner's argument is nothing more than a veiled contention that Furman indirectly outlawed capital punishment by placing totally unrealistic conditions on its use. In order to repair the alleged defects pointed to by the Petitioner, it would be necessary to require that prosecuting authorities charge a capital offense whenever arguably there has been a capital murder and that they refuse to plea bargain with the defendant. . . Such a system, of course, would be totally alien to our notions of criminal justice." Gregg, supra, 199-200, n. 50.

Appellant's Enumeration 4 is without merit.

5. In Enumeration 5, the appellant alleges the court erred in overruling defendant's motion for the court to appoint a criminologist or other expert witness to assist defense counsel and defendant's plea in abatement.

"The granting or denial of a motion for appointment of expert witnesses lies within the sound discretion of the trial court. Unless there has been an abuse of discretion, the trial court's ruling will be upheld." *Patterson v. State,* 239 Ga. 409, 412 (238 SE2d 2) (1977); *Thomas v. State,* 240 Ga. 393 (1977). Accord, *Welch v. State,* 237 Ga. 665, 672 (229 SE2d 390) (1976); *Holsey v. State,* 235 Ga. 270 (3)

(219 SE2d 374) (1975).

Appellant sought the criminologist to perform independent tests and examinations of "hair samples, blood samples, saliva samples, footprints, tire tracks, and ballistics tests of rifles and bullets."

There is no indication of any information possessed by the State Crime Laboratory that was not furnished to Moore's counsel. Furthermore, no error on the part of the persons who performed the tests and examinations has been shown.

Although appellant relies on *Patterson v. State*, 238 Ga. 204 (232 SE2d 233) (1977), we view our holding in *Patterson* as requiring no more than that an opportunity to examine an allegedly improper substance for identification purposes must be provided in an action for improper possession of narcotics; it merely conceded the right of access to evidence in a case in which the question of the identity of the alleged prohibited substance was determinative of guilt or innocence. *Patterson* has not been extended to cover all evidence in a criminal case nor does it hold there is a right to a court-appointed expert who would make an independent examination of all the evidence utilized in a criminal case. Appellant's plea in abatement was based on the absence of such witness.

We find no abuse of discretion by the trial court. Enumeration 5 is without merit.

6. In Enumeration 6, the appellant alleges the court erred in not requiring the state to reveal the name of the informant under the Brady motion which was known to Sheriff Coley.

The appellant filed a Brady (Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963)) motion and in response thereto the state turned over certain information to the appellant. The remainder of the district attorney's file was submitted to the trial court for an in camera inspection after which the court submitted to the appellant all items which the court believed might be favorable to the appellant. Additionally, the appellant's counsel was given the opportunity to listen to all the tapes made of interviews with witnesses. We believe the trial court did all that it could and all that was

required of it initially under Brady.

We turn now to the related request of the appellant made during the trial for the identity of the informant.

The informant whose identity is sought informed the sheriff that he saw Thomas Pasby with a 30.06 rifle two weeks before the robbery happened. That rifle had nothing to do with this case and Pasby was not convicted of theft of the rifle.

When appellant's counsel asked Sheriff Coley for the name of the informant the state's objection was sustained and the following colloquy occurred:

"By the Court: I'm going to sustain it. I don't believe the law requires an officer to reveal the identity of an informant as a general proposition, at this point. I don't think the State is required to disclose that, or the witness would not be required to disclose that at this point in the trial. By Mr. Freeman: We'll try to get back to that later, Your Honor. By the Court: That's not to say the Court would not change its mind later, but based on what the record now shows. By Mr. Freeman: I think that's all."

In *Thornton v. State,* 238 Ga. 160 (231 SE2d 729) (1977), we considered in depth the posture of a claim of informer's privilege under Code Ann. § 38-1102 in light of Brady v. Maryland, supra, at p. 87, and Roviaro v. United States, 353 U. S. 53 (77 SC 623, 1 LE2d 639) (1956), and concluded Brady requires the disclosure of evidence favorable to the defendant if the evidence is material to guilt or punishment. There is no indication the informant in this case had any evidence material to guilt or punishment of the appellant. Quite the contrary, his evidence is as to an unrelated offense by another person that did not result in conviction. Neither is the witness a "decoy" under Roviaro. Therefore, the trial court did not err in its ruling subject to later change sustaining the privilege. The appellant did not pursue the issue.

Enumeration 6 is without merit.

7. In Enumeration 7, the appellant alleges the court erred in admitting over objection the testimony of Johnny Lee Johnson.

Four days prior to the robbery and kidnapping of Teresa Carol Allen, the appellant asked Johnny Lee Johnson if Mr. Johnson knew of a place they could "hit."

Mr. Johnson explained that in the terminology of the three, "hit" meant rob. The appellant indicated to Mr. Johnson that he had a high-powered rifle to hit it with.

The victim was killed with a high-powered rifle.

This conversation constitutes facts to ascertain motives and was relevant, material and admissible. Code Ann. § 38-302.

Enumeration 7 is without merit.

8. In Enumeration 8, the appellant alleges the court erred in admitting over objection state's Exhibits Nos. 8, 12, and 13.

These exhibits were respectively a piece of a human ear, a piece or pieces of human flesh and bone. At trial appellant's counsel stated: "My only objection to these would be as to whether or not they were actually from the body of the deceased. There has been no scientific evidence to illustrate that conclusion; however, I assume—I object to the inclusion into evidence for that purpose, but as far as them being included into evidence as having been found at the scene, then I assume virtually anything could be included that was found at the scene, I have no objection."

The conclusion to be made was for the jury and they were justified in making such conclusion from their proximity to the body of the victim with a portion of the arm, face and ear blown away. The conclusion is further buttressed by the finding of a bullet, or metal jacket in the same bloody indentation in the roadbed.

The trial court did not err in admitting these exhibits.

9. In Enumeration 9, the appellant alleges the court erred in admitting over objection state's Exhibits Nos. 17, 18, 19, 20 and 21.

These exhibits were black and white photographs of the victim's body. The appellant alleges they were irrelevant and merely inflamed the minds of the jurors.

The trial court did not err in admitting the photographs. *Ramey v. State,* 238 Ga. 111 (230 SE2d 891) (1976); *Anderson v. State,* 233 Ga. 433 (211 SE2d 728) (1975); *Johnson v. State,* 226 Ga. 511 (175 SE2d 840) (1970); *Bryan v. State,* 206 Ga. 73 (55 SE2d 574) (1949).

10. In Enumeration 10, the appellant alleges the

court erred in permitting Sheriff L. C. Bittick to testify over objection as to items removed from the Moore residence by reading from a list prepared by the crime lab.

Sheriff Bittick referred to a crime lab list while testifying concerning items removed from the appellant's residence and delivered to the crime lab. The list was made at the crime lab when the sheriff turned the items over to the crime lab. The sheriff was present and verified the accuracy of the list at the time it was made at the crime lab as being the items taken from the Moore residence.

Code Ann. § 38-1707 authorizes the use of memorandum in aid of witness' memory. Preparation of the memorandum by the witness himself is not essential, if he knows it to be correct. *Lenney v. Finley,* 118 Ga. 427, 430 (45 SE 317) (1903). See also *Proctor & Gamble Co. v. Blakely Oil &c. Co.,* 128 Ga. 606 (2) (57 SE 879) (1907).

The sheriff's testimony clearly establishes he determined the list he testified from to be correct at the time it was made.

Enumeration 10 is without merit.

11. In Enumeration 11, the appellant alleges the court erred in permitting David Allen to testify over objection as to certain statements made by Roosevelt Green outside the presence of the defendant in which statements the name of the defendant was mentioned.

David Allen testified that after Roosevelt Green had been jailed in South Carolina following his arrest in connection with a convenience store robbery in that state, he requested to make a phone call. When the call was effected Roosevelt Green was heard to say over the phone, "Tell Carzell Moore that I'm in South Carolina in jail." Moore was arrested several days later and charged with the murder under review here.

At the point in the trial where this testimony was admitted there was already evidence before the jury from which they could find that Carzell Moore had been looking for a place to "hit" and that he and Roosevelt Green had been together steadily, acted in concert in distracting the victim's attention so Carzell Moore could bring the gun into the Majik Market to rob the victim, in taking turns raping the victim, and in disposing of the body of the victim—the only known eyewitness to the

crimes except the offenders themselves. From these actions the jury was entitled to find that a conspiracy existed between them. It had not terminated by confession to the police or investigative solution at the time Roosevelt Green was obviously trying to pass the word to Carzell Moore that he had been apprehended for whatever value that information might be to the appellant.

"After the fact of conspiracy shall be proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." Code Ann. § 38-306. "The rule is that so long as the conspiracy to conceal the fact that a crime has been committed or the identity of the perpetrators of the offense continues, the parties to such conspiracy are to be considered so much a unit that the declarations of either are admissible against the other." *Chatterton v. State,* 221 Ga. 424 (144 SE2d 726) (1965); *Evans v. State,* 222 Ga. 392 (150 SE2d 240) (1966). The statement here was made after the actual commission of the crime, but while the conspiracy continued and was admissible. *Crowder v. State,* 237 Ga. 141, 151 (227 SE2d 230) (1976); *Welch v. State,* 237 Ga. 665, 675 (229 SE2d 390) (1976).

12. In Enumeration 12, the appellant alleges the court erred in permitting Joseph Allen to testify as to aggravating circumstances over defendant's objection that defendant had not been put on notice of these aggravating circumstances.

The statutory aggravating circumstances relied on by the state were listed on a "Notice of Aggravating Circumstances" which was served upon the defense counsel and filed with the court in compliance with Code Ann. § 27-2503. The appellant's prior convictions were shown to the appellant's counsel and he was furnished photocopies of these records and told that they would be introduced in aggravation. Finally, a list of witnesses to be used by the state containing Joseph E. Allen's name was furnished to the appellant's counsel.

Following an emotional plea to the judge and jury by the appellant's mother for his life, the state called Joseph Allen, the father of the victim to the stand. Mr. Allen's testimony appears to have been unemotional and was

largely cumulative. The cumulative matter included the fact that she was 18 years of age, was attending college and worked at Majik Market. The only other matters were an expansion on this evidence to the effect she was an honor student, had been awarded a college scholarship, wanted to be a nurse, and was using her earnings to pay her way through college.

In earlier cases we have held that during the sentencing determination, the jury is not limited to matter presented during the sentencing phase of the trial but is entitled to consider any matter presented during the case in chief. *Chenault v. State,* 234 Ga. 216 (215 SE2d 223) (1975); *Eberheart v. State,* 232 Ga. 247, 252 (206 SE2d 12) (1974). During the case in chief, while cross examining Mrs. Joyce Smith, assistant manager of the Majik Market, the appellant's counsel elicited the information in response to questioning that they were supposed to keep the safe locked during store hours, that after arriving back at the store that evening (after disappearance of the victim) the safe was unlocked, the lid was sitting on the floor, and it was not damaged and the lock had not been forced. He did not ask about any other matters. Although the Georgia statute enumerates those aggravating circumstances, the existence of at least one of which is an absolute predicate to imposition of the death penalty, the legislature has not attempted to list other aggravating circumstances or mitigating circumstances which the jury may consider and may be subject to proof or rebuttal during the sentencing phase of the trial.

Evidence that the victim was a participant in the crime is recognized as a mitigating circumstance in the Model Penal Code (Model Penal Code § 201.6 (4), proposed official draft, 1962) and the Penal Code of the State of Florida. (Florida Statutes Ann.¶ 921.141.) Even without statutory provision the jury would be entitled to consider such matter in determining sentence. Proof of matter indicating participation by the victim is certainly an attack on the character of the victim and in rebuttal it was proper to establish the character of the victim. The sentence hearing is for evidence relating to the sentence and not admissible during the case in chief. *Eberheart,* supra.

The defense having been advised that Joseph Allen would be a witness and knowing that he had not been called was on notice that he would be called.

Enumeration 12 is without merit.

13. In Enumeration 13, the appellant alleges the court erred in overruling defendant's motion for a mistrial when the district attorney argued to the jury that a death sentence would be automatically appealed.

During his closing argument in the presentence phase of the trial, the district attorney mentioned the automatic appeal of death cases and appellant's counsel moved for a mistrial. The trial court overruled the motion for mistrial but twice charged the jury to disregard the remarks of the prosecution and emphasized that they should reach a verdict on the sentence on the facts and the issue presented to them by the court.

The timely curative instruction given before the case was decided accords with our direction in *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977).

Enumeration 13 is without merit.

14. In Enumeration 14, the appellant alleges the court erred in failing to charge the jury on defendant's alibi defense.

During his opening argument to the jury the appellant's counsel made the following statement:

"Ladies and Gentlemen, the type of case that we have is one in which the defendant can't on a particular day in question get up to you and prove that he was somewhere else through an alibi because he doesn't have an alibi. I can't get up here and tell you that he does and I'm not going to try to do that; he's not going to try to do that. He's not going to try to present to you an alibi witness to prove that he was somewhere else, that he couldn't have committed this crime because like most of us, he's not able to prove where he was on that particular day. . ."

Rather than a traditional alibi effort, appellant's testimony was to the effect that he simply was not at the scene of the crime at the time of the crime.

Although not requested by the appellant, the court charged the jury as follows:

"Before the jury would be authorized to find the defendant guilty of either Count I or Count II, the Jury

must find beyond a reasonable doubt that the defendant was present at the scene of the alleged crimes and his presence is an essential element of the crime as alleged in each count of the indictment, and the burden of proof as to such issue rests upon the State, as I have instructed you already. If the defendant were not present or if you should entertain a reasonable doubt as to whether or not he was present and participated in the alleged act or acts, then you would find the defendant not guilty under our law."

This instruction substantially covered the principle of alibi and was tailored to the appellant's testimony. *Cooper v. State,* 237 Ga. 288 (227 SE2d 745) (1976).

Enumeration 14 is without merit.

### III. Sentence Review

The death penalties imposed in this case must conform to the standards set forth in Code Ann. § 27-2534.1 to authorize affirmance. This court must determine whether the sentences of death were imposed under the influence of passion, prejudice, or any other arbitrary factor; whether the evidence supports the jury's findings of statutory aggravating circumstances; and, whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant, as required by Code Ann. § 27-2537 (c) (1-3).

We have reviewed the trial transcript and record and have made a comparison of the evidence and sentences in similar cases pursuant to the mandate of the statute. Using the standards prescribed for our review by the statute, we conclude that the sentences of death imposed in this case were not imposed under the influence of passion, prejudice or any other arbitrary factor.

In recommending the death penalty as to murder the jury found the following aggravating circumstances:

1. The offense of murder was committed while the offender was engaged in the commission of additional capital felonies, to wit: The rape, kidnapping and armed robbery of Teresa Carol Allen. Code Ann. § 27-2534.1 (b) (2).

2. The offense of murder was outrageously and wantonly vile, horrible and inhuman in that it involved

torture to the victim and depravity of mind on the part of the defendant. Code Ann. § 27-2534.1 (b) (7).

As to the rape the jury found the following aggravating circumstances:

1. The offense of rape was committed while the offender was engaged in the commission of additional capital felonies, to wit: The murder, kidnapping and armed robbery of Teresa Carol Allen. Code Ann. § 27-2534.1 (b) (2).

2. The offense of rape was outrageously and wantonly vile, horrible and inhuman in that it involved torture to the victim and depravity of mind on the part of the defendant. Code Ann. § 27-2534.1 (b) (7).

The evidence supports the jury's findings of statutory aggravating circumstances as to each of the counts.

We are not unmindful that under *Gregg v. State,* 233 Ga. 117, 127 (210 SE2d 659) (1974), where the aggravating circumstance authorizing the death penalty for one crime is a second crime, the first crime cannot then be used in aggravation of the second crime to support a second death penalty. However, even eliminating the rape from consideration as an aggravating circumstance supporting the death penalty for murder, the death penalties for both murder and rape in this case are each independently valid under our law and are each amply supported by the evidence.

The death penalty for rape is not unconstitutional where the victim is killed. See Coker v. Georgia, 433 U. S. 584 (97 SC 2861, 53 LE2d 982) (1977); *Collins v. State,* 239 Ga. 400 (236 SE2d 759) (1977). See also *Stanley v. State,* 240 Ga. 341 (1977).

In reviewing the death penalties in this case, we have considered the cases appealed to this court since January 1, 1970, in which death or life sentences were imposed and find the similar cases listed in the appendix support the affirmance of the death penalties in this case. Carzell Moore's sentence to death is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.

*Judgment affirmed. All the Justices concur.*

Argued September 14, 1977 — Decided February 7, 1978 —

REHEARING DENIED FEBRUARY 28, 1978.

W. *Franklin Freeman, Jr.,* for appellant.

*E. Byron Smith, District Attorney, Kenneth R. Waldrep, Assistant District Attorney, Arthur K. Bolton, Attorney General, James L. MacKay, Assistant Attorney General,* for appellee.

---

### APPENDIX

#### Murder Cases

*House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1975); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975); *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Goodwin v. State,* 236 Ga. 339 (223 SE2d 703) (1976); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976).

#### Rape Cases

*Coley v. State,* 231 Ga. 829 (204 SE2d 612) (1974); *Akins v. State,* 231 Ga. 411 (202 SE2d 62) (1973); *Eberheart v. State,* 232 Ga. 247 (206 SE2d 12) (1974); *Hooks v. State,* 233 Ga. 149 (210 SE2d 668) (1974); *Coker v. State,* 234 Ga. 555 (216 SE2d 782) (1975); *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976).