## 58714. QUIMBERLY v. THE STATE.

McMURRAY, Presiding Judge.

Defendant was indicted, tried, and convicted of the offense of livestock theft. It was alleged that he had stolen 18 feeder pigs of various color, the property of Charlie

Kemp, valued at $550. He was sentenced to serve a term of 10 years. Defendant's motion for new trial was thereafter filed and denied. Defendant appeals; the sole issue being as to the sufficiency of the evidence to convict, that is, the substance of the general grounds of the motion for new trial. *Held:*

The state's evidence is that the defendant was employed by Kemp, a farmer engaged in the business of raising hogs. A substantial number of the pigs from the farmer's operation appeared missing, and the owner became suspicious of defendant because defendant did not seem to need his paycheck, oftentimes failing to ask for his salary for two or three weeks. He was also absent on many times at the sale day at the local stockyard.

The farmer testified that after he became suspicious of the activities of his employee (the defendant) that one Sunday night he noticed defendant's car parked down below his dairy barn and went down and investigated. He could not locate the defendant but that defendant later drove up with another person, his clothing being very wet. The following day Kemp found a slick place under the fence near where the defendant's car had been parked. Particles of burlap were found on the fence. From this he surmised that someone may have been dragging sacks of pigs under the fence. He then investigated further and learned from Mitchell County Stockyards, a livestock auction business, that defendant had recently sold 18 feeder pigs to one Fowler McNair.

Kemp testified that he and his employee, Charles Wiley, went to the farm of Fowler McNair and identified the 18 feeder pigs, which had been purchased from the defendant, as being some of Kemp's missing pigs. The identification was accomplished by the recognition of a unique system of ear notches used to mark Kemp's pigs. Each of the pigs was marked to show a group number and a litter number as well as having their tails "dock[ed]." When the young pigs were born they would be marked by notching the right ear to show the group number and in the left ear to show the litter number. However, with respect to the pigs found at the farm of Fowler McNair, Kemp's testimony and that of Wiley differed somewhat. Kemp testified the pigs were out of group 2 while Wiley

testified they were "all in group 3" according to the ear markings, but both testified positively that they were the pigs which were the property of Kemp and that they had their ears notched.

The defendant presented evidence that he was in the hog business himself and the hogs which he sold to McNair through the auction sale were his own and not those of his accuser. Defendant testified that he had seen Mr. Wiley notch the ears of Mr. Kemp's hogs and had done so to his own for decorative purposes.

The state's evidence was that although the defendant worked with and helped Mr. Wiley that he never marked the hogs, that this was always done by Mr. Wiley personally. A GBI agent who was also in the hog business examined the barn where defendant testified that he conducted his hog business and determined that in his opinion the facility had not been used for raising hogs at the time stated by defendant.

The defendant's argument before this court is based primarily on the suggestion that the identity of the hogs sold to McNair as the property of Kemp was inconclusive because of the discrepancy in the testimony between Kemp and Wiley as to which group the 18 pigs belonged. Mr. Kemp recalled that the pigs were marked as group 2, while Wiley testified that they were marked as group 3. It was for the jury to determine whether this discrepancy in the testimony of these two men serves to discredit their testimony that the pigs in question were the property of Mr. Kemp and that they were able to identify them as such by the notches on their ears. See in this regard *Davis v. State,* 68 Ga. App. 296 (1) (22 SE2d 762); *Herrington v. State,* 149 Ga. App. 130, 131 (1) (253 SE2d 810). The evidence was sufficient to support the verdict. *Harris v. State,* 234 Ga. 871, 873 (218 SE2d 583); *Harris v. State,* 236 Ga. 766, 767 (225 SE2d 263); *Moore v. State,* 240 Ga. 807, 811 (II (1)) (243 SE2d 1). In reviewing the trial transcript and record, we are convinced and we so hold that a rational trier of fact (jury in this case) could readily have found the defendant guilty beyond a reasonable doubt as to the offense for which he was indicted.

*Judgment affirmed. Banke and Underwood, JJ., concur.*

SUBMITTED OCTOBER 16, 1979 — DECIDED OCTOBER 31, 1979.

*William H. Hedrick,* for appellant.
*Ben L. Bateman, District Attorney,* for appellee.