### 32502. HUDSON v. THE STATE.

JORDAN, Justice.

Israel Hudson appeals his conviction of murder and sentence of life imprisonment.

1. The appellant asserts that it was error to deny his challenge to the array of grand jurors, based on the alleged intentional, discriminatory, and systematic

exclusion of young adults between the ages of 18 to 30, women, and blacks from the grand jury lists.

It was stipulated that the evidence and ruling on the challenge to the grand jury in the case of the state against Gloria Smith would be the evidence and ruling in the present case, and the transcript of the hearing in that case has been furnished this court.

We adhere to our previous ruling that the alleged underrepresentation of persons in the age group of 18 to 30 will not be considered because they are not a recognized class. *White v. State,* 230 Ga. 327 (196 SE2d 849) (1973); *State v. Gould,* 232 Ga. 844, 845 (2) (209 SE2d 312) (1974); *Barrow v. State,* 239 Ga. 162, 164 (2) (236 SE2d 257) (1977).

The appellant was indicted by a grand jury in Glynn County in May, 1975. This grand jury was drawn from a list compiled in 1973. The defense attorney testified that he had examined the card files of the jury commissioners, and he was able to determine the characteristics of 1,314 of the 1,341 names on the list. Of these 1,314 there were 157 nonwhites and 309 females. The percentages, as contended by the appellant, in the grand jury list of the persons who could be characterized were 11.94% blacks and 23.51% females. Percentages in relation to the population of the county were 22.67% blacks and 51.92% females (21.83% blacks and 51% females between 18 and 65 years of age).

The percentages claimed by the appellant cannot be completely accurate since the race and sex of some of the grand jurors on the list were unknown, and all of the percentages were figured on age groups beginning with the age 18. Grand jurors could not be under the age of 21 years prior to July 1, 1977. Code § 59-201; *State v. Gould,* 232 Ga. 844, 845 (2), supra. See Ga. L. 1977, p. 341. This could have the effect of reducing the percentage of eligible blacks to the total county population.

We recognize that there is a disparity between the percentages of blacks and females on the grand jury list and the population percentages in the county, but we are convinced that the state carried the burden of proving that there was no purposeful discrimination against either class.

There was no evidence of a historical pattern of discrimination against blacks or women. The jury commissioners were composed of two white females, three white males, and one black male. This was reasonably representative of the population of the county. The jury commissioners testified that the basic list they used was the voters' list, which did not indicate the race of the individuals, although the sex could be determined in some instances by the given name of the individual. All of the jury commissioners testified that they were endeavoring to follow the law then in effect on the selection of jurors, which provided: "In composing such list they shall select a fairly representative cross-section of the upright and intelligent citizens of the county from the official registered voters' list which was used in the last preceding general election. If at any time it appears to the jury commissioners that the jury list, so composed, is not a fairly representative cross section of the upright and intelligent citizens of the county, they shall supplement such list by going out into the county and personally acquainting themselves with other citizens of the county, including upright and intelligent citizens of any significantly identifiable group in the county which may not be fairly represented thereon." Code § 59-106, as amended by Ga. L. 1967, pp. 251-252.

The commissioners mailed out approximately 10,000 cards to persons on the voters' list. They were unable to obtain addresses for all the persons on the list. Some had died, been convicted of felonies, or moved out of the county. *All* of the persons returning the cards who were not ineligible for jury service or exempt by law were placed on the list. A special effort was made to obtain names of blacks and women for jury service. They supplemented the voters' list by names from the city directory and other sources. They advertised in the newspaper that if anyone wanted to be on the jury list, to contact them. They had difficulty in obtaining women on their list because of the exemption allowed by law for mothers of children under 14 years of age. These actions of the jury commissioners show a determined bona fide effort to assure a jury list representative of a cross section of the community. We note that the record shows that the

traverse jury list at the same time was composed of 15.78% blacks and 31.39% females.

The voluminous evidence clearly showed that there was no intentional, discriminatory, and systematic exclusion of blacks or women, and it was not error to overrule the challenge to the array of grand jurors. The factual situation here as to the opportunity for purposeful discrimination is completely different from that set forth in *Barrow v. State,* supra, p. 166.

2. The appellant contends that the court erred in refusing a requested charge on involuntary manslaughter.

At the time of the homicide the appellant was living in the home of the deceased, Jake Johnson, who was an invalid. According to the evidence of Julius Curry, who was present at the shooting, the following occurred: The appellant came in the house, opened a drawer, and asked Johnson for a piece of chicken. Johnson told him that he had three chicken wings, but that he wanted to eat them. The appellant snatched the chicken out of the drawer, and Johnson hit the appellant over the head with his walking stick. The appellant told Johnson, "When I get through eating I'm going to kill you, old man." When the appellant got through eating, he took the shotgun which Johnson kept by his bed, put it up to his side, told him to take a deep breath, that it would be fast, and pulled the trigger.

The appellant's account of the homicide was as follows: When he walked in the room Johnson was sitting up in the bed with the shotgun in his hand. When the appellant walked by him, Johnson hit him with the shotgun, cursed him, and said, "I should kill you." The appellant grabbed the shotgun to pull it away from Johnson, and the gun went off and killed Johnson. The appellant did not intend to kill Johnson, but took the gun away from him because he was afraid for his life.

The trial judge presented to the jury the issues of murder, voluntary manslaughter, and justifiable homicide. The evidence did not require a charge on involuntary manslaughter, and it was not error to refuse to give the requested charge.

3. Error is asserted because the judge refused to give

the appellant's request to charge on "defendant's theory of the case." The judge charged the law applicable to the appellant's testimony, and it was not error to refuse to charge in the language requested.

4. The appellant was not denied a thorough and sifting cross examination of witness Julius Curry. The testimony which the judge excluded was a conclusion of the defense attorney drawn from the previous testimony of this witness, stated in the form of a question to the witness. The trial judge did not abuse his discretion in instructing the jury to disregard this question and the answer of the witness. *English v. State,* 234 Ga. 602, 604 (4) (216 SE2d 851) (1975); *Kessel v. State,* 236 Ga. 373, 374 (4) (223 SE2d 811) (1976).

5. The appellant contends that the court erred in charging: "Malice should be implied when no considerable provocation appears, and when all the circumstances of the killing show an abandoned and malignant heart." It is asserted that this instruction impermissibly shifted the burden of proof within the meaning of the decision of the United States Supreme Court in Mullaney v. Wilbur, 421 U. S. 684 (95 SC 1881, 44 LE2d 508) (1975). The same contention was rejected in *Davis v. State,* 237 Ga. 279, 280 (2) (227 SE2d 249) (1976); and *Patterson v. State,* 239 Ga. 409 (1977).

6. The appellant contends that the following charge on intent was error: "It may be inferred from the proven circumstances or by acts and conduct. It may be presumed when it is a natural and necessary consequence of an act—and the law presumes every act which is in itself unlawful was criminally intended unless the contrary is made to appear." It is asserted that this charge improperly shifted the burden of proof on the issue of intent contrary to the holding in Mullaney v. Wilbur, supra.

The trial judge fully charged on the burden of the state to establish beyond a reasonable doubt every fact essential to the conviction of the defendant, and stated that the appellant had no burden to sustain. The excerpt objected to did not improperly shift the burden of proof on the issue of intent. For cases dealing with similar charges see: *Phillips v. State,* 230 Ga. 444 (197 SE2d 720) (1973);

*Pittman v. State,* 230 Ga. 448 (197 SE2d 722) (1973); *Wilson v. State,* 233 Ga. 479, 481 (4) (211 SE2d 757) (1975); *Parks v. State,* 234 Ga. 579, 582 (2) (216 SE2d 804) (1975).

*Judgment affirmed. All the Justices concur, except Undercofler, P. J., and Hall, J., who dissent from Division 1, and Hill, J., who dissents.*

DECIDED OCTOBER 20, 1977 — REHEARING DENIED OCTOBER 26, 1977.

*Randall M. Clark,* for appellant.

*John Ossick, Arthur K. Bolton, Attorney General, Susan V. Boleyn, Staff Assistant Attorney General,* for appellee.