## 33012. DAVIS v. THE STATE.

NICHOLS, Chief Justice.

Curfew Davis, the appellant, was convicted of murder and sentenced to death in a Troup County jury trial. The facts of the case are stated in the opinion of this court in *Davis v. State,* 236 Ga. 804 (225 SE2d 241) (1976). The Supreme Court of the United States in Davis v. Georgia, 429 U. S. 122 (97 SC 399, 50 LE2d 339) (1976), vacated the appellant's death sentence because a juror opposing capital punishment was improperly excluded for cause. This court directed that the appellant be given a new trial as to sentence or else be sentenced to life

---

deliver the same to Kevin Joseph Sweeney, until further order of court."

imprisonment. *Davis v. State,* 238 Ga. 295 (232 SE2d 565) (1977).

The trial court granted a new trial as to sentence. After a jury trial as to sentence, the death sentence was imposed.

Appellant is before this court on appeal and for review of the death penalty imposed.

The evidence offered did not differ materially from that offered in the first trial as reported in *Davis v. State,* supra. It will not be repeated here.

1. Appellant's first enumeration of error alleges that "The Court erred in overruling the Appellant's challenge to the array of the traverse jury. The jury pool contained an underrepresentation of black people, women, and young adults 18 to 30 years of age, because they were systematically, intentionally, and purposefully discriminated against in violation of Georgia laws, the Georgia Constitution, the Sixth and Fourteenth Amendments, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the U. S. Constitution."

This court consistently has held that 18 to 30 year old persons are not a cognizable class for the purpose of a challenge to the array of the traverse jury. See *Barrow v. State,* 239 Ga. 162, 164 (236 SE2d 257) (1977) and *Hudson v. State,* 240 Ga. 70, 71 (239 SE2d 330) (1977) and cits. There is no merit in the first enumeration of error to the extent that it alleges underrepresentation of persons of those ages.

This court will not consider the alleged exclusion of women from the 1973 traverse jury from which the petit jury that convicted the appellant was impaneled because that jury was impaneled long before January 21, 1975, the date established by the Supreme Court of the United States for applicability of its decision in Taylor v. Louisiana, 419 U. S. 522 (1975), holding that women as a class could not be excluded from jury service. See Daniel v. Louisiana, 420 U. S. 31 (1975); *Young v. State,* 239 Ga. 53, 55 (236 SE2d 1) (1977); *Barrow v. State,* 239 Ga. 162, 164 (236 SE2d 257) (1977). There is no merit in the first enumeration of error insofar as it relates to that issue.

Neither will this court consider the first enumeration

of error insofar as it attempts to present for decision a challenge to the array of the 1973 traverse jury based upon alleged racial underrepresentation. The mandate of the Supreme Court of the United States required this court to reverse the judgment of the trial court as to sentence but not as to conviction, and this court acted in accordance with that mandate. *Davis v. State,* 238 Ga. 295, supra. Matters relating to the guilt or innocence phase of these proceedings have been concluded and are not presently before this court inasmuch as the present appeal is from the judgment imposing the death sentence following new trial as to sentence. The evidence as to alleged racial underrepresentation in 1973 will be considered, however, for such value as it may have in establishing historic patterns of underrepresentation.

Our consideration of appellant's allegation will therefore be limited to consideration of the alleged underrepresentation of blacks and women in the 1975 jury pool.

The test we must apply was set out in *Pass v. Caldwell,* 231 Ga. 192 (200 SE2d 720) (1973), based on *Whitus v. Georgia,* 385 U. S. 545 (87 SC 643, 17 LE2d 599) (1966), and applied in *Barrow v. State,* 239 Ga. 162, 164 (236 SE2d 257) (1977) and in *Fouts v. State,* 240 Ga. 39 (239 SE2d 366) (1977). There are two requirements for making out a prima facie case for discrimination. As defined in the *Barrow* case, they are, "First, the appellant must prove that an *opportunity for discrimination* existed from the source of the jury list, and, second, that the use of that infected source produced a *significant disparity* between the percentages found present in the source and those actually appearing on the grand and traverse jury panels."

Evidence presented by the appellant indicated that the 1970 census reflects that 31.8 percent of the population of Troup County is black and 52.9 percent is female. Persons assisting the defense compared the traverse jury list and the computerized voters' registration list. They testified that there were names that could not be located on the computerized list and that there were 84 names that could not be identified as to race or sex. The state asserts that of those persons in Troup

County eligible for jury service, 28.2 percent are black.

Admittedly, hearsay was used by the defense to determine the sex and race of approximately 150 jurors on the 1975 traverse jury list and 300 to 400 on the 1973 traverse jury list. Based upon this hearsay, a defense assistant testified that blacks composed 13.7 percent of the 1973 and 1975 traverse jury pools and women made up 40.3 percent of the 1973 traverse jury pool and 34.5 percent of the 1975 traverse jury pool. Appellant's attorney indicated there were 2,000 names in the 1973 traverse jury pool and 4,000 names in the 1975 traverse jury pool. An admitted reliance on hearsay to establish 15 to 20 percent of the 1973 pool seriously impairs the credibility of the representative percentages stated.

At the time of appellant's new trial as to sentence, the jury commission of Troup County was made up of three men and three women. Two of the jury commissioners were black. It is clear that the jury commissioners of Troup County used the voter registration lists as their source for selecting jurors. Glenn Robertson, a black jury commissioner, testified that he had no knowledge of blacks being prohibited from voting in Troup County, that blacks had conducted voter registration drives in Troup County, and that blacks had no trouble in registering to vote in Troup County.

Eight persons who were either former or present jury commissioners of Troup County were called by the appellant. They testified in pertinent part as follows: C. H. Day picked every sixth name from the voter registration lists. Edward Hamilton struck every sixth name from the voter registration lists. Glenn Robertson picked every sixth name, unless he knew the persons on the list were dead or had moved out of the city. Rance Sprayberry picked every sixth name and left off only those persons whom he knew to have a criminal record. Eleanor Cox, a black woman, followed the court's instructions to go down the voter registration list and choose every sixth name. Nancy Durand picked every sixth name on the voter registration list. She deviated from this pattern only if the person had died or moved from the state.

In 1975 two of the six jury commissioners used other

than a random selection. Julian Jones picked every sixth name the first time he went through his portion of the voter registration list. It was his recollection that the list was 700 names short, so Jones went through and chose people he thought would make good jurors. Lavinia Morgan checked the names at random, but if she recognized the name as that of a black person she knew, she purposely checked the black person's name.

Pursuant to a local rule of court stating that "Voter registration lists represent a fair cross section of the community in each Division of the Northern District of Georgia," the United States District Court for the Northern District of Georgia uses random selection from voter registration lists as the method of choosing jurors. This selection system has been upheld. United States v. Quinn, 364 FSupp. 432 (N. D. Ga. 1973); United States v. Davis, 546 F2d 583 (5th Cir. 1977). Troup County is in the Newnan Division of the Northern District of Georgia. 28 USC § 90 (a) (4).

Given the neutral selection method primarily used by the Troup County jury commissioners, the statistical disparity between the percentage of blacks eligible for jury service and the percentage of blacks on the 1975 traverse jury list affords no ground for relief. Thompson v. Sheppard, 490 F2d 830 (5th Cir. 1974), cert. den. 420 U. S. 984 (1975). The evidence in the present case was sufficient to authorize the trial court's denial of appellant's challenge to the grand jury composition. *Fouts v. State,* 240 Ga. 39, supra. The first enumeration of error is without merit.

2. In the second, third and fourth enumerations of error, the appellant alleges error concerning exclusion of jurors opposed to capital punishment.

Appellant's allegation that three prospective jurors were excused in violation of Witherspoon v. Illinois, 391 U. S. 510 (1968); Boulden v. Holman, 394 U. S. 478 (1969); and Maxwell v. Bishop, 398 U. S. 262 (1970), is without merit.

The three jurors the appellant alleges were improperly excused under Witherspoon testified in pertinent part as follows: Ruben Hayes testified that he was opposed to capital punishment, "I would not give it to

anybody," under any conditions.

Willie Cooper testified that he was conscientiously opposed to capital punishment. When asked if his attitude toward capital punishment would cause him to automatically vote against imposing the death penalty without regard to any evidence that might be developed in the case tried before him, he responded, "I think it would." When asked if he would not give the death penalty no matter what the evidence showed, he responded, "I don't believe in it."

Theotis Davenport testified that he was conscientiously opposed to capital punishment, that he would not impose it no matter what the evidence was or what had happened. In response to appellant's attorney's question whether "as a member of a jury, could you under any circumstances based on any evidence and based on the proper charge of the law from the Court consider the imposition of a death penalty in a proper case?" he responded, "No, I'm afraid not. I don't believe in the death penalty." When pressed on his response, he clarified his feelings by stating, "I don't believe a person has the right to execute a person if that's what you're saying," as well as "I don't think the law should have that authority. I don't believe the law should have that authority to do such a thing."

Considering their testimony as a whole, we believe that these three jurors were unalterably opposed to capital punishment within the requirements set forth in Witherspoon, supra, and Davis v. Georgia, 429 U. S. 122, supra. See also Dobbs v. State, 236 Ga. 427, 431 (224 SE2d 3) (1976) and Corn v. State, 240 Ga. 130 (240 SE2d 694) (1977).

Appellant's claim that the trial judge committed reversible error in not allowing defense counsel to ask eight jurors if there were some circumstances in which they could consider capital punishment is likewise without merit. Appellant's attorneys persisted in asking questions that the trial court had ruled objectionable and in some cases had directed them not to ask again. Any alleged curtailment of the right of examination occurred after attempting to pursue the same line of questioning. No prospective juror was excused until the trial court

determined that he was clearly and unalterably opposed to capital punishment and would vote against capital punishment regardless of the facts that might emerge during the trial. The striking of one juror was moot because the jury was selected before her name would have been reached.

Appellant's further assertion that the trial judge committed reversible error by exclusion of venire persons because of opposition to the death penalty denied appellant his Sixth Amendment right to a jury representing a fair cross-section of the community is also without merit. This contention was considered and rejected in *Porter v. State,* 237 Ga. 580 (229 SE2d 384) (1976); *Douthit v. State,* 239 Ga. 81 (235 SE2d 493) (1977); *Smith v. Hopper,* 240 Ga. 93 (239 SE2d 510) (1977); and *Corn v. State,* supra.

3. In the fifth enumeration of error, the appellant alleges, "The trial judge committed reversible error in not excusing for cause jurors who expressed fixed opinions as to punishment."

This court has examined the testimony of each of the five jurors appellant complains of under this enumeration and finds the enumeration to be without merit. None of the jurors could be said to have an opinion based on hearsay that was so fixed and definite that it would not be changed by the evidence or by the charge of the court upon the trial of the case. *Roach v. State,* 221 Ga. 783 (147 SE2d 299) (1966); *Butler v. State,* 231 Ga. 276 (201 SE2d 448) (1973); and *Tennon v. State,* 235 Ga. 594, 595-596 (220 SE2d 914) (1975).

4. "The expressions concerning . . . the belief in the truthfulness of police officers do not show bias to the extent requiring that a challenge for cause be sustained. Instead they show the truthfulness of the prospective jurors which assists counsel in making his peremptory challenges." *Tennon v. State,* supra, p. 596. Accordingly, the sixth enumeration of error is without merit.

5. In the seventh enumeration of error, the appellant alleges: "The trial judge committed reversible error in not granting a change of venue despite the poisoned community atmosphere against the Defendant."

We have examined the evidence and find that the 52

jurors who were on the traverse jury panel did not have a fixed opinion concerning appellant because of their exposure to pre-trial publicity. The fact that appellant did not use all of his peremptory challenges can be considered in determining whether the trial court abused his discretion in denying a change of venue. *Coleman v. State,* 237 Ga. 84, 92-93 (226 SE2d 911) (1976). A trial court's decision concerning a change of venue will not be reversed on appeal except for an abuse of discretion. *Allen v. State,* 235 Ga. 709 (221 SE2d 405) (1975). The trial court did not abuse its discretion. This enumeration of error is without merit.

6. In the eighth through twelfth enumerations of error, the appellant challenges the admissibility of his prior convictions.

The appellant does not contest the fact that all eight prior convictions are his and that all eight documents reflect he was represented by counsel. He was given notice on November 11, 1974, at his previous trial, that the state would introduce eight prior convictions into evidence. On May 30, 1977, some two weeks before trial, the district attorney gave notice to appellant and his attorney that the state would introduce these same eight prior convictions into evidence at appellant's resentencing trial.

Appellant testified in his own behalf that he was not represented by counsel when he pled guilty in 1959 to indictments 936, 937, 938 and 939 in the Carroll County Superior Court. In fact, he denies ever having seen the documents. He admits that he was the defendant in those four cases and does not deny that an attorney, W. P. Johnson, signed the indictments. He alleges he pled not guilty.

Appellant has failed to make a prima facie case that he was not represented by counsel, that his counsel was ineffective, and that his prior convictions are inadmissible. He presented no evidence to invalidate four prior convictions in Troup County.

Prior noncapital felonies are admissible under Code Ann. § 27-2534.1, but they cannot be used as statutory aggravating circumstances to authorize the imposition of the death penalty. *Hughes v. State,* 239 Ga. 393 (236 SE2d

829) (1977). The trial court did not err in admitting appellant's prior noncapital felony convictions.

Armed robbery is still a "capital felony" for purposes of aggravating circumstances under Code Ann. § 27-2534.1, even though the death penalty cannot be imposed for armed robbery. *Peek v. State,* 239 Ga. 422 (238 SE2d 12) (1977). The trial court did not err in admitting into evidence the appellant's prior conviction for armed robbery.

Appellant argues that the sentences imposed for his prior convictions should not have been admitted into evidence because they were not part of his "convictions" within the meaning of Code Ann. § 27-2503. The sentences are part of the "convictions" as used in Code Ann. § 27-2503. Furthermore, the trial court was correct in ruling that the jurors should be informed of the prior sentences so they could determine whether or not a given punishment "worked." This accords with the view of this court that jurors should be given as much information as possible concerning the crime and the defendant in order to enable them to perform their duties on an intelligent, informed basis.

Appellant's added assertion that the district attorney improperly commented on the possibility that if sentenced to life, he would not serve for life, is likewise without merit. The district attorney was merely cross examining witnesses on areas opened by the appellant on direct examination of witnesses called by the defense.

7. In the thirteenth enumeration of error, appellant alleges that "The instruction on impeachment of a witness violated the presumption of innocence of Appellant and shifted the burden of proof to him."

Georgia law provides that the credibility of a witness is a matter to be determined by the jury under proper instructions from the court. Code Ann. § 38-1805. It is clear that this enumeration of error is without merit when the trial court's charge on this matter is read as a whole. *Nunnally v. State,* 235 Ga. 693 (221 SE2d 547) (1975).

The court charged as follows: "Now, Ladies and Gentlemen, to impeach a witness is to establish that he is unworthy of believing. When the believability of a

witness is attacked, the jurors then must decide the truthfulness of the witness' testimony. When witnesses appear and testify, they are presumed to speak the truth and are to be believed by the Jury unless it is established that they are unworthy of belief in some manner provided by law or otherwise contradicted in your judgment. That a witness is unworthy of belief in his testimony, thus discredited, may be established by: 1. Disproving the facts testified to by him or her. 2. By proof of contradictory statements previously made by him or her on matters relevant to his or her testimony in the case. Or— 3. Proof of his or her conviction of a felony.

"Now, after you've weighed all the testimony and evidence supporting or discrediting a witness and at last decide whether you believe or disbelieve the testimony of the witness attacked, is the exclusive function of the jury and—to weigh all the circumstances of the case to determine whether a witness' testimony is believable or not.

"However, if you determine in your minds absolutely that a witness' testimony is impeached and thus discredited, then it is your duty to disregard such testimony unless such testimony is corroborated, in which case you may believe the witness. It is always a matter for the jury to determine whether or not a witness has in fact been impeached."

The thirteenth enumeration of error is without merit.

8. Appellant's assertion in the fourteenth enumeration of error that "The instructions failed to make clear that the jury could recommend life even if they found aggravating circumstances" is not supported by the record.

The court charged the following: "If you find beyond a reasonable doubt that the State has proved the existence in this case of either one or more aggravated circumstances as contended by the State and as given you a charge by the Court, then you would be authorized to recommend the imposition of a sentence of death; but you would not be required to do so . . . If you should find beyond a reasonable doubt that the State has proved the existence in this case of one or more aggravating circumstances

contended by the State and given you a charge by the Court, you would also be authorized to sentence the Defendant to prison for the term of his natural life. This recommendation you may make for any reason that is satisfactory to you." This charge accords with this court's holdings in *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977) and *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977). The fourteenth enumeration of error is without merit.

Sentence Review

The death penalty imposed in this case must be tested by the standards set forth for our determination in Code Ann. § 27-2537 (c) (1-3). This court must determine whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; whether the evidence supports the jury's finding of statutory aggravating circumstances; and, whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering the crime and the defendant.

We conclude that the sentence of death imposed on Curfew Davis was not imposed under the influence of passion, prejudice, or any other arbitrary factor. Appellant's allegation that some prospective jurors were prejudiced was considered in passing upon the fifth enumeration of error. Nothing occurred during the course of the trial that would indicate passion, prejudice, or other arbitrary factors affected the sentence.

The jury found as statutory aggravating circumstances:

(1) "the offense of murder was committed by a person with a prior record of conviction for capital felony" (Code Ann. § 27-2534.1 (b) (1)), and

(2) "the offense of murder was outrageously and wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." Code Ann. § 27-2534.1(b)(7).

The evidence supports the statutory aggravating circumstances found.

Appellant testified that he was coerced into kidnapping the victim. He admitted lying to the police, to pleading guilty to theft of the victim's automobile, and to

having previously robbed at gunpoint. He was released from prison in 1974.

Appellant called several witnesses. A former death row inmate testified that he (the witness) had been rehabilitated, and that "lifers" are not people who cause trouble in prison. A newspaper reporter testified he had written a book as a death house reporter. He described an electrocution and said most of those he saw executed were blacks. He was familiar with only two cases where parolees who were serving life terms for capital crimes had returned to prison as parole violators and committed heinous crimes. A minister who had served a prison ministry testified that in his study of executions in Georgia, only twice from 1930 to 1961 (31 years) was a wealthy man executed. A college religion professor explained his interpretation of the "eye for an eye and a tooth for a tooth" philosophy of punishment. A clinical psychologist testified appellant was borderline mentally retarded with no psychosis who might be easily led by others. On cross examination, when he was asked a hypothetical question encompassing the facts of appellant's case, he responded he would conclude his test results were probably wrong.

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed for murder, and we find the similar cases listed in the Appendix support affirmance of the death penalty for murder.

Curfew Davis' sentence of death for murder is not excessive or disproportionate considering the crime and the defendant.

*Judgment affirmed. All the Justices concur, except Undercofler, P. J., who dissents from Division 1 and the judgment, and Hill, J., who dissents from Divisions 1 and 2 and the judgment.*

ARGUED JANUARY 9, 1978 — DECIDED MAY 16, 1978 — REHEARING DENIED JUNE 9, 1978.

*Millard C. Farmer, Jr., Clinton Deveaux,* for appellant.

*William F. Lee, Jr., District Attorney, Arthur K. Bolton, Attorney General,* for appellee.

APPENDIX.

*House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1975); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Goodwin v. State,* 236 Ga. 339 (223 SE2d 703) (1976); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Harris v. State,* 237 Ga. 718 (230 SE2d 1) (1976); *Pryor v. State,* 238 Ga. 698 (234 SE2d 918) (1977); *Gaddis v. State,* 239 Ga. 238 (236 SE2d 594) (1977); *Corn v. State,* 240 Ga. 130 (240 SE2d 694) (1977); *Moore v. State,* 240 Ga. 807 (1978).

HILL, Justice, dissenting.

I dissent from Divisions 1 and 2 of the court's opinion and the judgment.

As the majority opinion notes, the defendant offered evidence showing that 31.8% of the population of Troup County is black and 52.9% is female (my computations from the 1970 census of Troup County as to the population over 18, and thus eligible to serve as jurors, shows that 27.8% is black and 55.3% is female). The evidence showed that the applicable traverse jury list was 13.7% black and 34.5% female. The disparity in black jurors was a least 14.1% (27.8% minus 13.7%) and the disparity in women was even greater.

Our law, Code Ann. § 59-106 (as amended), requires that when the jury list does not contain a fairly representative cross-section of the upright and intelligent citizens of the county, the jury commissioners shall supplement the list so as to make identifiable groups (e.g., blacks, women) fairly representative. There is no evidence of compliance in this case with this requirement and the percentages demonstrate that it has not been satisfied. Because the jury selection procedure did not

comply with our law, I must dissent.

I believe that juror Ruben Haynes was excused for cause in violation of Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968). The voir dire of this prospective juror shows that after expressing general opposition to capital punishment, he responded to the district attorney's questions by saying that his attitude was not such as would cause him to automatically vote against the death penalty, that he guessed he could give a person capital punishment under some circumstances or at least would have to do some thinking on that, and that whether he would give anybody capital punishment would depend on the circumstances. When informed by the court that his last answer was not a full answer, the juror apparently believed the judge was telling him he would have to make up his mind one way or the other, that he could not equivocate depending "on the circumstances." In any event, he then said that he "would not give it to anybody" under any conditions. The state moved to strike the juror and the defense sought to examine him. In response to questions from defense counsel, the juror said that if the evidence was concrete then he could not say unequivocally that he would automatically vote against the death penalty but that he couldn't consider the death penalty if he wasn't sure. This juror was excused for cause, improperly I believe. He did not show "... unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal. . ." Witherspoon, supra, 391, p. 516, n. 9. He was not shown to be irrevocably committed to vote against the penalty of death regardless of the facts and circumstances adduced at trial. See Davis v. Georgia, 429 U. S. 122, 123 (97 SC 399, 50 LE2d 339) (1976).

For the foregoing reasons, I must dissent.

### ON MOTION FOR REHEARING.

1. Counsel is afforded wide scope in the selection of language for the presentation of issues to this court. Rule 5 (b). Particularly is this the case in appeals from the sentence of death. However, the bounds of proper legal argument were exceeded when defense counsel falsely

accused a Justice of this court of having used a racial epithet. Rule 5 (a) (b). The sole and obvious purpose of this attribution was to prejudice further review of this case on its merits.

2. The motion for rehearing is being denied for the reason that it merely restates in very general terms the specific contentions set forth in the brief for the appellant, which contentions previously have been determined to be lacking in merit.

*Motion for rehearing denied. All the Justices concur as to paragraph 1 of the denial of the motion for rehearing. Undercofler, P. J., Hall and Hill, JJ., dissent as to paragraph 2.*