## 33755. JOHNSON v. THE STATE.

MARSHALL, Justice.

The appellant, Johnny L. Johnson, was convicted of murder, rape, kidnapping, and aggravated assault in the Chatham Superior Court. He received the death penalty for the murder conviction, a life-imprisonment sentence for the rape conviction, a 20-year sentence for the kidnapping conviction, and a 10-year sentence for the aggravated-assault conviction. His case is here on direct appeal and for mandatory review of the death sentence imposed.

### I. Summary of the Evidence

In July of 1974 the appellant Johnson was stationed at a military base in Beaufort, S. C. He and Jerry Sprouse were in Savannah on the evening of July 20, 1974. They were going to attend a rock concert at the Savannah Civic Center, but they were unable to obtain tickets. Suzanne Edenfield and Mary Lynne Harrod had attended the rock concert. They were driving down Victory Drive when they were approached by two white males, Johnson and Sprouse, in a "cream colored car." The driver, Johnson, asked the girls if they wanted to stop and smoke a joint (marijuana). The girls responded affirmatively, and the parties proceeded in their respective cars to Savannah High School. They parked the cars there, and the girls joined Johnson and Sprouse in Johnson's car. The girls remained in that car for approximately 15 minutes, during which time they smoked a couple of joints of marijuana. They then informed Johnson and Sprouse

that they had to leave, and they returned to their own car.

As Suzanne was starting the car, Sprouse appeared with a gun and forced the girls into the back seat of Johnson's car. Sprouse got into the back seat also, and Johnson drove the group down Highway 17 South. Johnson and Sprouse bound and gagged the girls and drove them to a wooded area off Highway 17. Once there, Johnson left the car with Suzanne and raped her. Sprouse attempted to have sexual intercourse with Lynne in the back seat of Johnson's car, but he was unable to consummate the act. Johnson returned to the car with Suzanne, and he proceeded to partially disrobe her. Lynne was completely nude at this time. Both girls were still bound. Johnson then ordered the two girls to stand over "off the side of the road." Johnson then got into the car and turned it around. He then got out of the car and stood next to Sprouse. Lynne next heard a gunshot ring out, and she then saw Suzanne fall to the ground. That gunshot fatally wounded Suzanne. Another gunshot hit Lynne, wounding her, but not fatally.

Johnson and Sprouse took the car and abandoned and burned it in a wooded area in South Carolina. However, the car was not completely destroyed, and it was found by law enforcement authorities and traced to Johnson. Johnson and Sprouse fled to Canada. They later returned to the Savannah area, and Johnson was apprehended in a laundromat in South Carolina.

At trial, Johnson contended that Sprouse was the active perpetrator of the crimes and that he, Johnson, had gone along with Sprouse only because Sprouse was in possession of the gun. He maintained that it was Sprouse who had shot the girls. He contended that he had not had sex with Suzanne Edenfield, but this contention was contradicted by the presence of male sperm found in her vagina.

After reviewing the record, we conclude that the evidence presented at trial fully authorized the jury in finding that Johnson and Sprouse were equally involved in the commission of these crimes. Accordingly, we hold that the trial court did not err in overruling the appellant's motion for new trial.

## *II. Enumerations of Error*

1. In Enumeration of error 1, the appellant argues that imposition of the death penalty pursuant to Code Ann. § 27-2534.1 (b) (7) (Ga. L. 1973, pp. 159, 163) constitutes cruel and unusual punishment because neither the court nor the jury is given standards to determine whether the offense for which the death penalty is being given is "outrageously or wantonly vile, horrible, or inhuman[e] in that it involved torture, depravity of mind, or an aggravated battery to the victim."

This same argument was made and rejected in Gregg v. Georgia, 428 U. S. 153, 201 (96 SC 2909, 49 LE2d 859) (1976). In Gregg, the Supreme Court of the United States noted that the language in this statutory aggravating circumstance need not be construed in an overly broad fashion. In *Harris v. State,* 237 Ga. 718, 732-733 (230 SE2d 1) (1976), this court held that it would restrict its approval of the death penalty under this statutory aggravating circumstance to those cases that clearly fall within its ambit. Recognizing the possibility of abuse of this statutory aggravating circumstance, the court in *Harris* held that it had no intention of permitting it to become a "catchall" for cases simply because no other statutory aggravating circumstance is raised by the evidence.

Enumeration of error 1 is therefore without merit. Enumerations of error 4 and 5 are also controlled adversely to the appellant under our ruling in this division.

2. In Enumeration 2, the appellant argues that the trial court erred in excusing veniremen Bryan, Coleman, and Henry for cause in that they did not make it unmistakably clear that they were unalterably opposed to the death penalty. Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968).

Upon being individually questioned on voir dire, Bryan, Coleman, and Henry did make it unmistakably clear that they would vote against the death penalty regardless of what transpired at trial, as required by Witherspoon and its progeny before prospective jurors can be excused for cause.

At the beginning of voir dire examination, the court

.

clerk asked the entire traverse jury panel if anyone was conscientiously opposed to the death penalty, as permitted by *Arnold v. State,* 236 Ga. 534 (6) (224 SE2d 386) (1976). Neither Bryan, Coleman, nor Henry responded affirmatively to this question. Later on voir dire, when being individually questioned, these prospective jurors stated that they had misunderstood the question. After indicating upon being questioned individually that they were unalterably opposed to the death penalty, these prospective jurors were properly excused for cause. This enumeration of error is without merit.

3. In Enumerations 3, 8 and 13, the appellant contends that the trial court erred in allowing the state to place his character in issue by introducing evidence of specific acts of misconduct unrelated to the charges against him.

Witness Lilly testified that Johnson had told him, approximately one month before the crimes in this case were committed, that he and Sprouse had been riding around Beaufort, S. C., and that they had seen different girls coming in and out of the different clubs in and around town. Johnson told Lilly that he and Sprouse were thinking of "going out and seeing if they could find some of those girls to take out and see how much they could get out of them." Johnson also told Lilly that, "if they didn't want to do what he told them to, they were going to force them." Lilly also testified that he saw Johnson waving a pistol around, stating that as long as he had the pistol he could do what he wanted.

Witness Yawn testified that approximately one month before the crimes in this case were committed, a female magazine salesman came to his house in Beaufort, S. C., while Johnson was present. He testified that Johnson had suggested that they rape her.

The general rule is that evidence of independent crimes is inadmissible at the trial of the crime charged, even though it be a crime of the same sort. *Bacon v. State,* 209 Ga. 261 (71 SE2d 615) (1952). However, evidence of the other crime is admissible if some logical connection can be shown between it and the crime charged from which it can be said that proof of one tends to establish the

other, other than by merely showing the bad character of the accused. *Bacon v. State,* supra. Evidence of independent crimes has been admitted for the purpose of showing, among other things, motive, plan, scheme, bent of mind, and course of conduct. See, e.g.,*Hicks v. State,* 232 Ga. 393 (207 SE2d 30) (1974); *McNeal v. State,* 228 Ga. 633 (187 SE2d 271) (1972); *Allen v. State,* 201 Ga. 391 (40 SE2d 144) (1946). The exception to the general rule that evidence of independent crimes is inadmissible has been most liberally extended in the area of sexual offenses. *Jessen v. State,* 234 Ga. 791 (218 SE2d 52) (1975); *Burnett v. State,* 234 Ga. 741 (218 SE2d 4) (1975); *Hunt v. State,* 233 Ga. 329 (211 SE2d 288) (1974); *Dorsey v. State,* 204 Ga. 345 (49 SE2d 886) (1948).

The complained-of evidence did not show that the defendant had committed other rapes, but rather the evidence showed a bent of mind on the part of the defendant to commit such crimes. In the present case, the fact that the defendant was a participant in the crimes charged was undisputed, the critical issue being whether or not his participation was voluntary. His bent of mind to commit rape showed the likelihood that he would voluntarily participate in a scheme to kidnap and rape the two victims and, for this reason, became highly relevant. Therefore, the trial court did not err in admitting the complained-of evidence. This enumeration of error is without merit.

4. In Enumeration 6, the appellant argues that it was error for the trial court to allow the state to use the statutory aggravating circumstance that "the offense of murder, rape, armed robbery, or kidnapping was outrageously or wantonly vile, horrible or inhuman[e] in that it involved torture, depravity of mind, or an aggravated battery to the victim," Code Ann. § 27-2534.1 (b) (7), to support imposition of the death penalty for both rape and murder.

This enumeration of error is without merit for several reasons. First, the appellant did not receive the death penalty for rape. Second, even if the appellant had received the death penalty for rape, a defendant who has been found guilty of committing two capital felonies can receive the death penalty for both of them on the ground

that they both were "outrageously or wantonly vile, horrible or inhuman[e] in that it involved torture, depravity of mind, or an aggravated battery to the victim." *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978).

The appellant's reliance on *Gregg v. State,* 233 Ga. 117, 127 (210 SE2d 659) (1974) is misplaced. What that decision holds is that if one crime, i.e., robbery, is used as the statutory aggravating circumstances to support imposition of the death penalty for another crime, i.e., murder, then the murder can not then be used as the statutory aggravating circumstances to support imposition of the death penalty for the armed robbery.

5. In Enumeration 7, the appellant complains that instead of giving the jury written instructions on mitigating and aggravating circumstances as required by Code Ann. § 27-2534.1 (c), the trial court gave the jury "possible verdicts in writing."

Looking to the trial court's instructions to the jury during the presentence hearing, we find that the jury was properly instructed on mitigating and statutory aggravating circumstances, under *Spivey v. State,* 241 Ga. 477 (246 SE2d 288) (1978). The "possible verdicts in writing" were given to the jury to aid it in designating whether its verdict was to be a recommendation of death and, if so, what statutory aggravating circumstances had been found beyond a reasonable doubt. This enumeration of error is without merit.

6. In Enumeration 10, the appellant argues that since the jury did not find him guilty of kidnapping with bodily injury, it was precluded from finding him guilty of murder, rape, and aggravated assault.

What the appellant's argument overlooks is that he was only indicted for simple kidnapping. His conviction for that offense was in no way inconsistent with the finding by the jury that after the appellant kidnapped the victims, he raped and murdered one of them and committed an aggravated assault upon the other. This enumeration of error is without merit.

7. In Enumeration 11, the appellant contends that the trial court erred in overruling his motion for change of venue due to adverse pre-trial publicity.

Code Ann. § 27-1201 (Ga. L. 1972, p. 536) provides for

a change of venue in a criminal case whenever an impartial jury cannot be obtained or there is a probability or danger of violence. The question as to whether venue should be changed addressed itself to the sound discretion of the trial court. E.g., *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976).

As stated in Irvin v. Dowd, 366 U. S. 717 (81 SC 1639, 6 LE2d 751) (1961), the test for determining whether adverse pre-trial publicity has so affected the community that the defendant cannot receive a fair trial is whether the prospective jurors summoned to try the case can lay aside their impressions and opinions and render a verdict based on the evidence presented at trial. Looking to the voir dire record of examination, we cannot say that an unbiased and impartial jury was not selected to try the case. We conclude that the trial court did not abuse its discretion in overruling the motion for change of venue. This enumeration of error is without merit.

8. In the final enumeration of error, the appellant argues that the trial court erred in allowing in evidence photographs of the victim and extended autopsy testimony. These are matters lying within the discretion of the trial court (*Avery v. State,* 209 Ga. 116 (70 SE2d 716) (1952)), and under the circumstances of this case we find no abuse thereof.

### III. Sentence Review

In reviewing the death sentence imposed in this case, we are required by Code Ann. § 27-2537 (c) (Ga. L. 1973, pp. 159, 165) to consider three questions:

First, we must determine "[w]hether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor." Code Ann. § 27-2537 (c) (1). After reviewing the transcript and record, we conclude that it was not.

Second, we must consider whether the evidence supports the jury's finding of statutory aggravating circumstances. Code Ann. § 27-2537 (c) (2). In this case, the jury imposed the death penalty based on the finding that the murder was "outrageously or wantonly vile, horrible or inhuman[e] in that it involved torture, depravity of mind, or an aggravated battery to the victim." Code Ann. § 27-2534.1 (b) (7).

The murder in this case was conducted in a methodical, execution-style fashion. The victim was disrobed at the time of the murder, and she had her hands tied behind her back. The murder itself was preceded by the rape of the victim. This clearly evinced a depravity of mind on the part of the defendant and involved torture to the victim. In both respects, it was outrageously and wantonly vile. The evidence supports the jury's finding of this statutory aggravating circumstance, and the verdict is factually substantiated.

Third, we must determine whether the sentence of death was excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. Code Ann. § 27-2537 (c) (3).

In reviewing the death sentence in this case, we have considered cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed, and we find that the similar cases listed in the appendix support the affirmance of the death penalty in this case.

*Judgment affirmed. All the Justices concur.*

Argued July 11, 1978 — Decided October 17, 1978 — Rehearing denied November 21 and December 5, 1978.

*William P. Franklin, Jr., Stephen H. Harris,* for appellant.

*Andrew J. Ryan, III, District Attorney, Robert M. Hitch, III, Assistant District Attorney, Arthur K. Bolton, Attorney General, Susan V. Boleyn, Assistant Attorney General,* for appellee.

APPENDIX.

*House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1975); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975); *Goodwin v. State,* 236 Ga. 339 (233 SE2d 703) (1976); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976);

*Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976); *Corn v. State,* 240 Ga. 130 (240 SE2d 694) (1977); *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978); *Davis v. State,* 241 Ga. 376 (247 SE2d 45) (1978); *Green v. State,* 242 Ga. 261 (1978).