### 34877. BOWEN v. THE STATE.

MARSHALL, Justice.

The appellant was convicted of murder and rape. He received a death sentence for the murder conviction and a

life imprisonment sentence for the rape conviction. On direct appeal to this court, the underlying convictions were affirmed, as was the life sentence for rape; however, the death sentence for murder was set aside due to defects in the instructions to the jury during the presentence hearing. See *Bowen v. State*, 241 Ga. 492 (246 SE2d 322) (1978). Following remand to the trial court, the appellant has been resentenced, and he has been given the death penalty again. This is the appeal.

## I. *Enumerations of Error*

1. In the first enumeration of error, the appellant argues that the sentence of death is strongly against the weight of the evidence and excessive as to punishment. These arguments are disposed of in our sentence review, infra.

2. In the second enumeration of error, the appellant argues that the trial judge erred in failing to give a requested instruction to the jury on mitigating circumstances.

The appellant requested the trial judge to instruct the jury ". . . that evidence of mitigation may consist of facts showing that the defendant was of good character and had a good reputation; that he had a reputation as being peaceable; that his personal life was marked with conflicts with his wife and a girl friend that caused deep inner stresses and emotions which were difficult to control; that, since the commission of the act for which you are to sentence the defendant, he has shown remorse and sorrow, has been a model prisoner in the local jail, and has sought to help others in similar positions as himself; and in the judgment of others who have had ample time to observe him, displays much potential for rehabilitation and return to society."

Instead of enumerating these mitigating circumstances, as requested by the defense, the trial judge defined mitigating circumstances to the jury as "those which do not constitute justification or excuse for the offense in question but which in fairness and in mercy may be considered as extenuating or reducing the degree of moral culpability." The trial judge further instructed the jury that, "[i]n arriving at your verdict in this case you will consider the evidence as to the mitigating

circumstances which the defendant contends exists in the case including evidence of good character or any other mitigating circumstances you find from the evidence." We find no error in this jury charge.

The trial judge's charge to the jury was in conformity with the decision of this court in *Fleming v. State,* 240 Ga. 142 (7) (240 SE2d 37) (1977); *Hawes v. State,* 240 Ga. 327 (9) (240 SE2d 833) (1977) and *Spivey v. State,* 241 Ga. 477 (246 SE2d 288) (1978). As held in *Thomas v. State,* 240 Ga. 393 (4) (242 SE2d 1) (1977), Georgia law does not require the trial judge in a death penalty case to single out the mitigating circumstances to the jury. See Code Ann. § 26-3102 (Ga. L. 1968, pp. 1249, 1335; 1969, p. 809; 1973, pp. 159, 170). In this case, the trial judge correctly instructed the jury to "consider the evidence as to mitigating circumstances which the defendant contends exists . . . or any other mitigating circumstances you find from the evidence." This enumeration of error is without merit.

3. In the third enumeration of error, the appellant argues that Code § 59-806 (4), which authorizes the interrogation of prospective jurors in regard to their opposition to capital punishment, deprives the defendant of his constitutional right to an impartial jury made up of a representative cross section of the community.

This argument by the appellant carries its own seeds of refutation. We quote from the appellant's brief: "An examination of the trial transcript reveals that jurors who answered the question 'Are you conscientiously opposed to capital punishment?' in the affirmative were further examined and ultimately excused as disqualified if they persisted in stating that under no conditions would they vote for the death penalty. Thus, the defendant's constitutional right to an impartial jury made up of a representative cross section of the community [was violated]." Thus, those jurors who were disqualified because of their reservations about capital punishment, were properly excused for cause under Witherspoon v. Illinois, 391 U.S. 510 (88 SC 1770, 20 LE2d 776) (1968). The argument that this deprived the defendant of his right to a jury selected from a representative cross section of the community has been specifically rejected by both

this court and the Supreme Court of the United States. *Smith v. Hopper,* 240 Ga. 93 (1) (239 SE2d 510) (1977); Lockett v. Ohio, 438 U.S. 586 (98 SC 2954, 57 LE2d 973, 984-985) (1978). This enumeration of error is without merit.

4. In the fourth enumeration of error, the appellant argues that the trial judge erred in overruling his challenge to the array of the traverse jury.

Prior to the appellant's resentencing hearing, he filed a challenge to the array of the traverse jury on four grounds: (1) intentional, systematic exclusion of young adults, ages 18 to 30, from the panel; (2) intentional, systematic exclusion of blacks; (3) intentional, systematic exclusion of women; (4) intentional, systematic weighting of the jury by selecting a grossly inordinate number of jurors over 50. In the jury challenge, the appellant alleged that this violated his rights under the Federal and State Constitutions.

At the hearing on the jury challenge, several members of the Polk County Jury Commission were called to testify. Of the jury commissioners, four are white males, one is a white female, and one is a black male. The jury commissioners testified to the following effect: the appellant's jury was struck from a traverse jury panel which had been most recently revised in September-October, 1977. The panel was drawn from a 1975 Polk County voters registration list, a list of county voters who had voted in the last general election, a list of persons under court jurisdiction, telephone books, and city directories. The primary source from which the jurors were drawn was the list of voters who had voted in the last election. The commission was given brief instructions from the Polk County Superior Court Judge, including an instruction to have males, females, blacks and whites on the jury list. The commission met as a group and discussed each name considered. They were considered on the basis of each jury commission member's acquaintance with them—specifically on the basis of character, ability, and capability to be a juror. If everybody approved, the name would be placed on the jury list. The commission did not put anyone on the jury list about whom someone on the commission did not know something. They did not take

any investigative action to get to know people they did not know. (The jury commissioners were not aware of their duty, imposed by Code § 59-106 (1976 amendment), to supplement the jury list by going out into the county and personally acquainting themselves with other citizens of the county, if it appeared that the jury list, as composed, was not a fairly representative cross section of the intelligent and upright citizens of the county.) Blacks were designated with a "(c)" on the voters lists furnished to the panel, but all of them, particularly the black jury commissioner, knew pretty well the great majority of the black community. They did not know the percentages of male-female or black-white in Polk County, but no one was excluded from the traverse jury panel because of race, age or sex; and it was the aim of the jury commission to secure a cross section of people from the community for the traverse jury panel.

The appellant's statistical evidence consisted of a 1970 U. S. Dept. of Commerce census for Polk County, showing a population of 29,656: 45.8% male, 54.2% female; 86.2% white, 13.7% black. In addition, the defense conducted a survey of the 1977 traverse jury list, which contained 2,029 names. Of these names, 554 (29.5%) were female and 1,323 (70.5%) were male; 116 (6.2%) were black and 1,761 (93.8%) were white. One hundred and fifty-two names were unclassifiable by gender or race. The witness who had conducted the survey of the traverse jury list testified that the unclassifiables were either people who had moved or who had died.

The state called as witnesses the black member of the jury commission, whose testimony was in accord with the testimony of the other jury commissioners, and the superior court clerk, who testified that the voter registration list she gave the jury commission did not contain any racial designations.

After the hearing, the trial judge overruled the jury challenge, stating that he did not believe there was any "system, scheme or anything" indicating a prima facie discrimination to change the ratio of minority groups and also that the 152 unclassifiable names could significantly change the black-white and male-female percentages. The court also denied a request for funds to develop the

past history of the composition of the traverse list, in view of the lack of any showing of prior discrimination.

In order to make out a prima facie case of jury discrimination, the defendant must establish (1) that a distinctive group or recognizable class in the community has been excluded from the jury list; (2) that an opportunity for discrimination against this group existed from the source of the jury list; and (3) that use of the infected source produced a significant disparity between the percentages found present in the source and those actually appearing on the jury panels. See, e. g., Duren v. Missouri, — U. S. — (99 SC 664, 58 LE2d 579) (1979); Castaneda v. Partida, 430 U. S. 482 (97 SC 1272, 51 LE2d 498) (1977); Taylor v. Louisiana, 419 U. S. 522 (95 SC 692, 42 LE2d 690) (1975); Alexander v. Louisiana, 405 U. S. 625 (92 SC 1221, 31 LE2d 536) (1972); Turner v. Fouche, 396 U. S. 346 (90 SC 532, 24 LE2d 567) (1970); Whitus v. Georgia, 385 U. S. 545 (87 SC 643, 17 LE2d 599) (1967); *Davis v. State,* 241 Ga. 376 (247 SE2d 45) (1978); *Hudson v. State,* 240 Ga. 70 (239 SE2d 330) (1977); *Fouts v. State,* 240 Ga. 39 (239 SE2d 366) (1977); *Barrow v. State,* 239 Ga. 162 (236 SE2d 257) (1977); *Sanders v. State,* 237 Ga. 858 (230 SE2d 291) (1976); *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976); *State v. Gould,* 232 Ga. 844 (209 SE 2d 312) (1974); and *Pass v. Caldwell,* 231 Ga. 192 (200 SE 2d 720) (1973).

Age is not, however, a recognized class for the purpose of jury representation. *Barrow v. State,* supra; *State v. Gould,* supra; *Davis v. State,* supra. Therefore, the appellant's jury challenge on the two grounds that young adults between the ages of 18 and 30 were underrepresented, and adults over 50 were overrepresented, is clearly without merit.

We hold that the trial court was also authorized in overruling the remaining two grounds of the appellant's jury challenge, because the appellant failed to show that the disparity between the percentages of blacks and women in the population and on the traverse jury panel was "significant." Under the appellant's survey, 152 out of 2,029 names on the traverse jury panel were unclassifiable. This constituted approximately 7.5% of the traverse jury panel, a significant percentage.

Consequently we hold that the appellant failed to establish an impermissible disparity between the percentages of blacks and women on the traverse jury panel and the source of these jurors in the population. This enumeration of error is without merit.

## II. *Sentence Review*

In a death penalty case such as this, Code Ann. § 27-2537(c) (Ga. L. 1973, pp. 159, 165) requires us to determine: (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) whether the evidence supports the jury's finding of a statutory aggravating circumstance; and (3) whether the sentence is excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.

The evidence in this case is set out in the appellant's prior appeal, *Bowen v. State,* 241 Ga. 492, supra. The evidence shows that the appellant raped a 13-year-old girl in a vacant house and then murdered her by inflicting multiple stab wounds to her face, chest, and abdomen. The jury imposed the death penalty at the appellant's first trial, and at the retrial, on the ground that the murder was "outrageously and wantonly vile" in that it involved "torture" and "depravity of mind." See Code Ann. § 27-2534.1(b) (7). The mitigating circumstances advanced by the appellant included evidence that he was suffering from psychological problems at the time the crimes were committed, that he had no prior criminal record, and that he had cooperated with law enforcement authorities after his arrest.

(1) We find that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

We do note that the prosecuting attorney, in closing argument, paraphrased to the jury the sentiments on imposition of the death penalty expressed in *Eberhart v. State,* 47 Ga. 598, 610 (1873), and the prosecuting attorney attributed these sentiments to "one of our noted Justices." It has been held in *Hawes v. State,* 240 Ga. 327 (11) (240 SE2d 833) (1977) that attribution of such sentiments to a justice of this court with the object of influencing the jury to impose the death penalty is

improper. In this case, we find that the evidence against the defendant is so overwhelming that the reading to the jury of the preceding remarks could not have injected an improper element of passion, prejudice, or other arbitrary factor. See *Presnell v. State,* 241 Ga. 49, 62 (243 SE2d 496) (1978), revd. on other grounds, Presnell v. Georgia, — U. S. — (99 SC 235, 58 LE2d 207) (1978).

(2) We find that the evidence supports the jury's finding of the statutory aggravating circumstance beyond a reasonable doubt.

(3) We find that the appellant's sentence to death is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed for murder, and we find the similar cases listed in the appendix support affirmance of the death penalty for murder.

*Judgment affirmed. All the Justices concur, except Hill, J., who dissents.*

ARGUED MAY 15, 1979 — DECIDED OCTOBER 3, 1979 — REHEARING DENIED OCTOBER 23, 1979.

*William J. Perry,* for appellant.

*W. A. Foster, III, District Attorney, Arthur K. Bolton, Attorney General, G. Stephen Parker, Assistant Attorney General,* for appellee.

APPENDIX.

*House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Owens v. State,* 233 Ga. 869 (214 SE2d 173) (1975); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976); *Dix v. State,* 238 Ga. 209 (232 SE2d 47) (1977); *Corn v. State,* 240 Ga.'130 (240 SE2d 694) (1977); *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978); *Presnell v. State,* 241 Ga. 49 (243 SE2d 496) (1978); revd. — U. S. — (99 SC 235, 58 LE2d 207) (1979), reaffd. 243 Ga. 131 (252 SE2d 625) (1979); *Westbrook v. State,* 242 Ga. 151 (249 SE2d 524) (1978); *Johnson v. State,* 242 Ga. 649 (250 SE2d 394) (1978);

*Davis v. State,* 242 Ga. 901 (252 SE2d 443) (1979);
*Spraggins v. State,* 243 Ga. 73 (252 SE2d 620) (1979).