## 31807. PRYOR v. THE STATE.

HALL, Justice.

Leonard Pryor was tried by a jury in the Superior Court of Irwin County and convicted of the kidnap and murder of Mrs. Grace Broome. For kidnapping with bodily injury he was sentenced to life imprisonment. On the murder conviction the jury found the aggravating circumstance that the murder was committed during the course of another capital crime, and sentenced him to death. He is before this court on appeal and for mandatory review of the death sentence imposed.

1. *Summary of the Evidence*

The state presented evidence including Pryor's confession tending to show the following facts:

On November 19, 1975, Pryor went to Mrs. Broome's home with a shotgun and shells and asked permission to hunt on her property. She consented. He then pointed the gun at her and forced her to enter her automobile and drive him to a field about 3 1/2 miles away. He ordered her out of the car and into the woods; when she turned around he shot her in the face. The shot knocked her unconscious and probably, though not certainly, would have caused her death. While she was lying on the ground he reloaded and shot her in the neck. He loaded a third time and shot her in the neck again. These last two shotgun blasts

caused death.

On the day the victim was shot Pryor received automobile rides from several persons near the place where the victim's automobile and body were discovered two days later. Pryor's left thumb print was discovered in her car. Police obtained a search warrant to search his residence. The owner of that residence consented to a search of the house, where the police found the murder weapon and a box of shotgun shells. The wadding in the shells matched that found in the victim's brain. Pryor confessed to the murder.

At trial, Pryor neither testified nor introduced any evidence.

## 2. *Enumerations of Error*
### A. *Double Jeopardy*

1. In his first enumeration of error, Pryor argues that the only evidence of bodily injury in connection with the kidnapping was the murder of the victim; therefore, the killing could not be both murder and the bodily injury that raises simple kidnapping to a capital felony. See Code Ann. § 26-1311. It follows, he continues, that the aggravating circumstance of an additional capital felony during which the murder was committed was not proved, and therefore the death penalty for murder was not authorized.

This argument raises, among others, the question whether murder is an included offense within kidnapping with bodily injury, as a matter of law or as a matter of fact. Under Code Ann. § 26-505, a crime is included in the other when "(a) It is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged, or (b) It differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission."

The state argues that Pryor's three shots at the victim culminated the aggravated kidnapping and went on to cause murder. Pryor views the three shots as an unbroken act of murder.

The general rule is that when individual acts are prohibited, each act is punished separately, no matter

how close they may be in time to each other. E.g., Bins v. United States, 331 F2d 390, 393 (5th Cir. 1964). See generally, Kirchheimer, The Act, The Offense and Double Jeopardy, 58 Yale L. J. 513 (1949); Comment, Twice in Jeopardy, 75 Yale L. J. 262 (1965).

" 'A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.' " Gavieres v. United States, 220 U. S. 338, 342 (1911), quoting Morey v. Commonwealth, 108 Mass. 433. Blockburger v. United States, 284 U. S. 299, 304 (1932); *McIntosh v. State,* 116 Ga. 543 (42 SE 793) (1902).

A frequently repeated test in the federal system is that "For a double jeopardy claim to be viable, it must be shown that the two offenses charged are in law and in fact the same offense." Hattaway v. United States, 399 F2d 431, 432 (5th Cir. 1968). Accord, Gavieres, supra, 220 U. S. at 343.

The situation in Georgia is not the same. It *used* to be required here that the offenses to be the same "must be identical both as a matter of fact and as a matter of law." *Harris v. State,* 193 Ga. 109, 117 (17 SE2d 573) (1941). However, our relatively new statute on included crimes, Code Ann. §§ 26-505 and 26-506, as we pointed out in *State v. Estevez,* 232 Ga. 316 (206 SE2d 475) (1974) requires that although a defendant may be *prosecuted* for all crimes committed, he may not be convicted of more than one crime if the crimes charged are the same in law *or* fact. Accord, *Harvey v. State,* 233 Ga. 41 (209 SE2d 587) (1974); *Rowe v. State,* 232 Ga. 700 (208 SE2d 500) (1974). As the *Estevez* fact situation illustrated, this alternative rather than conjunctive test can mean the difference between affirming and reversing a conviction. What the statute appears to have accomplished is a broadening of the "merger" concept. At common law, a merger occurred only when the same act constituted both a felony and a misdemeanor; the misdemeanor merged into the felony. The rule had no application when both offenses were either misdemeanors or felonies. Purdom v. United States, 249 F2d 822 (10th Cir. 1957). In Georgia, however,

under Code Ann. § 26-506 (a) (1), (using the definition of "included" from Code Ann. § 26-505) a felony may merge into another felony which requires an additional element or a more culpable mental state or a more serious injury or risk of injury to the same person, property, or public interest. This provides for broader protection to an accused than does the Federal Constitution. See generally, *Keener v. State,* 238 Ga. 7 (230 SE2d 846) (1976).

Against this background, we conclude that the succession of three shots which first wounded and then killed Pryor's victim, were adequate to complete the crime of kidnapping with bodily injury, and to commit the separate crime of murder. As a matter of law, the two crimes are not the same. Kidnapping with bodily injury requires an unlawful abduction or stealing away and the holding of a person, plus the infliction of some bodily injury upon that person. The crime of murder is committed when one causes the *death* of another with the peculiar mental state of express or implied malice. As a matter of *law,* because of the different elements of the crimes, murder is not included within kidnapping with bodily injury. As a matter of *fact,* these shots were separate, and each constituted a renewed assault upon the victim. The first shot caused a serious wound, but the last two shots were definitely fatal and in fact ended her life. The two crimes charged here were completed one after the other, but are separate and distinct.

What we have written suffices to show that Pryor was properly convicted both of aggravated kidnapping and murder. The aggravating circumstances which the jury found in imposing a death sentence for the murder, namely, that the murder was committed while defendant was engaged in an additional capital felony (kidnapping with bodily injury), is without question adequately supported by the evidence since the kidnapping with injury stands as a separate crime. The kidnapping indictment here charged kidnapping with bodily injury, namely, shooting the victim to death with a shotgun. Our analysis which uses evidence of a less-than-fatal shotgun blast to justify convicting under this indictment is proper. See *Flournoy v. State,* 106 Ga. App. 756 (128 SE2d 528) (1962). Naturally, the state's evidence in toto, proved the

shotgun murder of the victim.

We feel constrained here to address a hypothetical fact situation not now before us, namely, a situation identical to this save that a single shot kills the victim and constitutes the only bodily injury. We are concerned about that situation because significant criminal penalties ought not to hinge upon whether it requires one shot or three shots to kill a victim, once the victim's murder has been undertaken.

Without the new statute discussed above, viz. Code Ann. §§ 26-505 and 26-506, the one-shot situation would be controlled by the time-honored principle that a single act may constitute more than one crime. E.g., Gore v. United States, 357 U. S. 386 (1958); Gavieres v. United States, 220 U. S. 338, supra; Harris v. State, 193 Ga. 109, 118 (17 SE2d 573) (1941). For example, "[i]f one uses to and of another opprobrious words and abusive language which is obscene and vulgar, and this is done in the presence of a female, both offenses are committed, though there is only one transaction." McIntosh v. State, 116 Ga. 543, 544 (42 SE 793) (1902).

The new statute, as construed in Estevez has canceled that rule of law in Georgia. It is decisive to note that the language which determined Estevez' fate was this: "In the instant case, however, the evidence required to convict of illegal sale was the only evidence showing possession. Therefore . . . the illegal possession was included in the crime of illegal sale as a matter of fact under Code Ann. § 26-505 (a)." 232 Ga. at 320. That reasoning is entirely inconsistent with holding that a single shot, constituting murder, may also constitute kidnapping with bodily injury caused by that shot. The only evidence of the bodily injury would be the evidence used to prove the murder, and defendant could be prosecuted for, but could not be convicted of, both crimes. See also Williams v. State, 238 Ga. 244 (232 SE2d 238) (1977) (aggravated assault and simple battery were included in kidnapping with bodily harm); Chumley v. State, 235 Ga. 540 (221 SE2d 13) (1975) (possession of firearm merged into armed robbery); Allen v. State, 233 Ga. 200, 203 (210 SE2d 680) (1974) (rape merged into kidnapping with bodily injury); Roberts v. State, 228 Ga. 298 (185 SE2d 385) (1971) (two examples of

merger). Arguably, in this hypothetical situation the kidnapping would have to be reduced to simple kidnapping. In the sentencing phase, however, the jury would still be free to find as an aggravating circumstance that the murder was committed in the course of another capital felony, to wit kidnapping with bodily injury. (The bodily injury is necessary to make kidnapping a capital felony, see Code Ann. § 26-1311.) That is true because the "inclusion" limitations of Code Ann. §§ 26-505 and 26-506 would not govern here, because they limit only what a defendant may be convicted of, not what may be used as an aggravating circumstance. "[T]he Georgia statute does not require a conviction [of the aggravating crime] to find aggravated circumstances." *Hooks v. State,* 233 Ga. 149, 151 (210 SE2d 668) (1974). Therefore, the single-shot murder could be "used twice," so to speak, once to make a crime and again to make an aggravating circumstance; to constitute murder and to complete the capital felony of kidnapping with bodily injury which is an aggravating circumstance authorizing death. There is, of course, no constitutional bar to this kind of "using twice." Williams v. Oklahoma, 358 U. S. 576 (1959). (The jury could also find, under Code Ann. § 27-2534.1 (b) (2) as an aggravating circumstance, that simple kidnapping was committed while the offender was engaged in another capital felony—the murder, thus avoiding this problem.)

### B. *Other Enumerations*

2. The state's evidence, including evidence of Pryor's confession, supported the verdicts. *Lowe v. State,* 225 Ga. 56 (165 SE2d 861) (1969). (Enumerations 2 and 3).

3. There is no merit to Enumeration 4, arguing that the court erred in failing to instruct the jury to purge their minds of testimony to the effect that certain fingerprints used for comparison purposes were Pryor's. The court instructed the jury that they were to consider this testimony only if the prosecutor later connected it up. Pryor did not request cautionary instructions nor move for a mistrial.

The claim that the court erred in allowing the state to plead surprise and entrapment of its witness is similarly without merit. The witness was Pryor's great

grandfather, and the question was whether or not Pryor was living at the witness' house at the time the prosecutor and the sheriff came to the residence to conduct a search for the murder weapon. The witness' power to consent to a search of the residence was critical. It is clear from reading the transcript that the witness had in fact previously told the prosecuting attorney that Pryor *was not* living there at the time in question but had abandoned his former room; but prior to being cross examined by the prosecutor the witness testified that Pryor *was* living there. The witness' responses to questions indicated difficulty communicating with the questioner, and it does indeed appear from the cross examination that he did not actually intend to deny that Pryor had moved out. His first testimony was a surprise and was damaging, and under Code Ann. § 38-1801 the prosecutor was correctly allowed to cross examine him. In any event, the prosecutor is not required to show that the witness' testimony is a total surprise, nor that it is affirmatively damaging. *Wilson v. State,* 235 Ga. 470 (219 SE2d 756) (1975).

In both instances the testimony was merely cumulative of properly admitted evidence and Pryor suffered no harm from its admission. *Welch v. State,* 237 Ga. 665, 676 (229 SE2d 390) (1976); *Bryant v. State,* 236 Ga. 790 (225 SE2d 309) (1976).

4. In Enumeration 5, Pryor claims three errors.

(a) During the cross examination of Sheriff Pope, Pryor's attorney asked, "Can you tie this gun to the fatal wounds of Mrs. Broome?" We find no error in the trial court's ruling that the response would call for a legal conclusion by the sheriff. *Mitchell v. State,* 236 Ga. 251 (223 SE2d 650) (1976). Whether the state's evidence showed the shotgun to be the murder weapon was an issue for the jury to determine; Pryor confessed that it was. In any event, it was the crime lab's job, and not the sheriff's, to tie the weapon to the crime.

(b) The court allowed State's Exhibits Nos. 18 and 18A (the evidence bag and certain shotgun shells) to be admitted into evidence over Pryor's objection that continuity of possession had not been established from the shotgun owner's residence to the crime laboratory.

Under our holding in *Painter v. State,* 237 Ga. 30, 33 (226 SE2d 578) (1976) that circumstances must establish a reasonable assurance of the identity of the evidence but need not exclude every possibility of tampering, the evidence in this case establishes a sufficient chain of custody to authorize the admission of the shotgun shells into evidence.

(c) Pryor's great grandfather testified that the officers asked if they could come in and search, and he said yes. This evidence was properly admitted over defense objection that the response involved hearsay as to what the officers asked. It is difficult to understand Pryor's argument here. The testimony was relevant to show consent which was freely and voluntarily given by one with custody of a home, validating a search and seizure. *Welch v. State,* supra. Additionally, since Pryor had moved before the search took place, he had no standing to challenge it. See *Phillips v. State,* 237 Ga. 623 (229 SE2d 407) (1976).

Enumeration 5 is without merit.

5. In Enumeration 6, Pryor alleges the court erred in denying his pre-trial motion for discovery and to compel disclosure, without holding an in camera inspection, (which Pryor did not request). Denial of an in camera inspection is not automatically error. *Hicks v. State,* 232 Ga. 393, 396 (207 SE2d 30) (1974).

Discovery as such is not available to an accused in criminal cases in Georgia. *Hicks v. State,* 232 Ga. 393, supra. *Brown v. State,* 238 Ga. 98 (231 SE2d 65) (1976), contains an analysis of discovery as applied to criminal cases. We held there that a motion to produce books, writings or other documents or tangible things pursuant to Georgia Code Ann. §§ 38-801 (g) and 38-802 is applicable to criminal cases.

(a) Pryor complains that he was not informed by the state of what would turn out to be crucial evidence by the state's fingerprint expert and firearms expert. However, Pryor was furnished these witnesses' names prior to trial, and could have determined their testimony by questioning them. This complaint shows no error. Weatherford v. Bursey, —U. S.— (No. 75-1510, decided February 22, 1977). Moreover, their evidence was not

favorable to Pryor, which is required before he has any right to compel the state to disclose it. *Hicks v. State,* supra.

(b) His claim that he was not advised that one state's witness had been jailed for driving without a license is without merit. For impeachment purposes conviction of a crime of moral turpitude is required.

(c) A tape recording of his confession, running several hours, and a typed transcript of it, are claimed to have been erroneously denied under the discovery motion. Neither the tape nor the transcript was introduced into evidence. Pryor's counsel were permitted before trial to hear the tape; however, they argue here that the tapes they heard contained erasures, whereas the transcript was complete. We are thus inferentially invited to conclude that exculpatory matter appeared on the transcript. The burden is on Pryor to show that he was denied beneficial evidence which was so important that its absence prevented his receiving a fair trial. *Carter v. State,* 237 Ga. 617, 619 (229 SE2d 411) (1976). "The appellant has the burden of showing how his case has been materially prejudiced, even when the trial court declines to make an in camera inspection." *Hicks v. State,* supra, 232 Ga. at 396. Pryor has not carried that burden, and his claim of error is without merit. *Coachman v. State,* 236 Ga. 473, 475 (224 SE2d 36) (1976).

6. Pryor was tried on indictment number 5075; there was an earlier, untried indictment charging him with the victim's murder. Under Division 1 hereof, No. 5075 was not duplicitous for any reason claimed. The pendency of another indictment related to the same transaction does not vitiate his conviction. *Appleby v. State,* 9 Ga. App. 570 (71 SE 876) (1911).

7. In Enumeration 8 Pryor alleges the trial court erred in denying his motion for mistrial. During opening argument, the district attorney stated: "We expect to show you that the defendant admitted at that time that he had indeed slain Mrs. Grace Broome, that he was very bitter, that he slew her without any justification, any cause, other than his own bitterness." Pryor objected, and the court instructed the jury, "The jury will understand that this is what the District Attorney says he expects to

prove and you will not consider any statement the District Attorney makes as evidence."

Under the facts of this crime, showing a wholly unprovoked abduction and killing, the jury was entitled to infer malice. We see nothing inherently damaging in the use of the word "bitterness." We cannot agree with Pryor's argument that since he was black and the victim white, the word "bitterness" encourages the jury to see racial overtones in his motivation.

Assuming arguendo that the argument was improper, it was cured by the judge's corrective instruction. See *Watkins v. State,* 237 Ga. 678 (229 SE2d 465) (1976).

8. In Enumeration 9, Pryor claims error in the court's allowing witnesses to testify for the state whose names were not furnished him before arraignment after timely demand was made under Code Ann. § 27-1403.

In the case of both witnesses the district attorney stated in his place that the evidence was newly discovered and that the state was not aware of the evidence at the time Pryor was furnished with a list of witnesses. The trial court did not err in permitting these witnesses to testify. See Code Ann. § 27-1403; *Welch v. State,* 237 Ga. 665, 677, supra; *Butler v. State,* 226 Ga. 56, 58-59 (172 SE2d 399) (1970).

9. Pryor contends that the testimony of Deputy Dean was not the best evidence of his confession because the confession was taped and the tape subsequently transcribed. He does not challenge the voluntariness of the statement and, indeed, a hearing under Jackson v. Denno, 378 U. S. 368 (1964) was held at trial. There appears to be no contest concerning the content of the statement, whether from memory of Deputy Dean, recorded on tape, or transcribed. The "best evidence rule" Code Ann. §§ 38-203, 38-701 applies only to writings *(Smith v. State,* 236 Ga. 5, 8 (222 SE2d 357) (1976)), and only where the contents of the writings are in issue. *Springer v. State,* 238 Ga. 81 (230 SE2d 883) (1976). This claim is without merit.

10. Pryor's claim that his confession was inadmissible because the arrest warrant in his case was invalid under Connally v. Georgia, —U. S.— (97 SC 546,

50 LE2d 444), because it was issued by a justice of the peace for a fee, is irrelevant. Although the evidence is unclear as to whether the warrant was issued before or after the confession, it is clear that the defendant had not been placed under arrest at the time he confessed.

### 3. *Sentence Review*

We have reviewed the sentence as required by Ga. L. 1973, p. 159 et seq. (Code Ann. § 27-2537 (c) (1-3)) as we have in each case involving a death penalty under this statute, considering the aggravating circumstance found by the jury and the evidence concerning the crime. We conclude that the sentence of death imposed on Leonard Pryor was not imposed under the influence of passion, prejudice or any other arbitrary factor.

The jury found as a statutory aggravating circumstance "The offense of murder was committed while the offender was engaged in the additional capital felony to wit: Kidnapping Bodily Injury to person kidnapped." Code Ann. § 27-2534.1 (b) (2). The evidence supports the jury's finding.

If the evidence is believed, this was a callous, intentional, methodical murder of a helpless victim. Diverse juries in widely separated counties throughout the state have imposed the death penalty under these circumstances. Leonard Pryor's sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant. In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed and we find the similar cases listed in the Appendix support affirmance of the death penalty.

*Judgment affirmed. All the Justices concur, except Ingram, J., who dissents from Division 1 and the sentence of death.*

ARGUED JANUARY 12, 1977 — DECIDED APRIL 27, 1977.

*Harry Mixon, Floyd H. Wardlow, Jr.,* for appellant.

*Walters, Davis, Ellis & Smith, W. Emory Walters, Thomas H. Pittman, District Attorney, Arthur K. Bolton, Attorney General, Harrison Kohler, Staff Assistant Attorney General,* for appellee.

APPENDIX.

Similar cases considered by the court: *House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *McCorquodale v. State,* 233 Ga. 369 (211 SE2d 577) (1974); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975); *Chenault v. State,* 234 Ga. 216 (215 SE2d 223) (1975); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975); *Smith v. State,* 236 Ga. 12 (222 SE2d 308) (1976); *Mason v. State,* 236 Ga. 46 (222 SE2d 339) (1976); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976); *Goodwin v. State,* 236 Ga. 339 (223 SE2d 703) (1976); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Stephens v. State,* 237 Ga. 259 (227 SE2d 261) (1976); *Isaacs v. State,* 237 Ga. 105 (226 SE2d 922) (1976); *Banks v. State,* 237 Ga. 325 (227 SE2d 380) (1976); *Dungee v. State,* 237 Ga. 218 (227 SE2d 746) (1976); *Harris v. State,* 238 Ga. 718 (230 SE2d 1) (1976); *Young v. State,* 238 Ga. 852 (230 SE2d 287) (1976); *Dix v. State,* 238 Ga. 209 (232 SE2d 47) (1976).