## 34444. LEGARE v. THE STATE.

UNDERCOFLER, Presiding Justice.

The appellant, Andrew Phillip Legare, was tried and convicted on charges of armed robbery, burglary, and malice murder, and sentenced to life for armed robbery, twenty years for burglary, and death for murder. He comes to this court on direct appeal and for mandatory review of the death sentence imposed.

*I. Summary of the Evidence.*

Essentially the evidence was as follows:

Appellant, age 17 years, and Roger Horne, age 18 years, escaped from the Youth Development Center in Milledgeville, Georgia, about 1:30 a.m. on May 27, 1977. They tied their clothes in two bundles and threw them out the window of the building in which they were confined. Later they exited the building from an upper story window by climbing down sheets which had been tied together to form a rope. Both were dressed only in undershorts. Horne climbed down first. Appellant climbed down about ten seconds later. A security guard was alerted by a noise, observed Horne escaping, and gave chase. He stated Horne was carrying some sort of bundle. The guard discontinued the chase and as he turned around appellant had jumped or fallen to the ground and was running off. He stated Horne and appellant disappeared into the bushes about fifty feet apart.

On May 27, 1977, about 12:30 p.m., a neighbor heard a scream from the victim's house and saw a boy get into the victim's car and drive off. He called members of the family who resided elsewhere. They arrived in about fifteen minutes, entered the house, and found the victim on the living room floor bleeding profusely. He had been beaten severely about the head and died about twelve hours later without regaining consciousness. A blood

spattered crowbar and a wooden stick were found under the sofa.

Appellant was apprehended in Tampa, Florida, on June 1, 1977, while driving the victim's car. He testified that after the escape he and Horne came upon the victim's house about dawn. They hid in the woods until about 8 a.m. when they observed the victim drive off in his car. Then they entered the house, took some clothes, drank some milk, and divided $30 which they found in a bureau drawer and kitchen drawer. Appellant trimmed his hair. Appellant stated he had gone to sleep beneath a bed when he heard a car come into the driveway, the door open, and a loud "crack". He went into the living room and observed the victim "on all fours" with a crowbar in his hand with Horne straddling him and beating him with a wooden stick. There was a "good bit of blood" on the floor. Appellant stated he became excited and wanted to get out of there. As he left he saw the victim's car keys on the floor. He picked them up and the victim or Horne bumped the front of his sneaker, he also picked up a jug of water, ran out, and fled in the victim's car. His fingerprints were found in the victim's house. Appellant admitted blood stained sneakers found in the car were his.

Horne testified that after he escaped from the Youth Development Center he did not see appellant again. He thought appellant had been captured by the security guard who chased him. He stated he abandoned appellant's clothes in the woods, put on his state pants and shirt, and kept his personal clothes; that he stayed in the woods that night; the next day he walked down some railroad tracks, changed into his personal clothes, and hitchhiked to Savannah where he was apprehended a week and a half later. His fingerprints were not found at the victim's house. Hair samples found at the victim's house were not Horne's. Horne led police officers to the locations where he discarded certain clothing and a location where he had smoked cigarettes. Police recovered the clothing and evidence of smoking.

## II. Enumerations of Error.

1. In Enumeration 1, the appellant alleges: "The court below erred in its charge to the jury on sentencing in that said charge, considered as a whole, did not make it

clear that the jury could recommend mercy, i.e., a life sentence, even if the jury found that the existence of statutory aggravating circumstances had been proven."

We have examined the sentence charge and conclude that it made clear to the jury that it could recommend mercy, i.e., a life sentence even if the jury found that the existence of statutory aggravating circumstances had been proved. *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977); *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977); *Spivey v. State,* 241 Ga. 477 (246 SE2d 288) (1978).

Enumeration 1 is without merit.

2. In Enumeration 2, the appellant alleges, "The court below erred in its charge to the jury on sentencing because the charge was confusing, self- contradictory, and did not include a proper charge on non-statutory mitigating circumstances."

In addition to reading from the statute, the trial court charged the jury, "[n]ow, in arriving at the determination for the punishment for murder you are authorized to consider all the evidence received in court, presented by both the state and the defendant throughout the trial before you. You are authorized to consider the facts and circumstances, if any, in extenuation, mitigation, or aggravation of punishment which may have been submitted to you." The trial court also charged "there was no evidence of either aggravation on behalf of the state or mitigation on behalf of the defendant that has been admitted into evidence, except the argument of both, the state, and the defendant." This latter charge obviously referred to the sentencing phase of the trial. We have held that it is not required that the trial court single out mitigating circumstances for consideration of the jury. *Thomas v. State,* 240 Ga. 393 (242 SE2d 1) (1978); *Potts v. State,* 241 Ga. 67 (243 SE2d 510) (1978); *Spivey v. State,* supra.

Enumeration 2 is without merit.

3. In Enumeration 3, the appellant alleges: "The court below erred in its charge to the jury on sentencing by charging repealed Georgia Code Ann. § 27-2534 and failing to charge the substance of Georgia Code Ann. § 27-2503 (b)."

The appellant contends the trial court committed

reversible error by not instructing the jury as follows: "Upon the conclusion of the evidence and the arguments, the judge shall give the jury appropriate instructions, and the jury shall retire to determine whether any mitigating and aggravating circumstances as defined in § 27-2534.1, exist and whether to recommend mercy for the defendant."

The trial court charged the jury that it was their duty "to consider any mitigating circumstances or aggravating circumstances otherwise authorized by law and any of the following statutory aggravating circumstances which may be supported by the evidence" and that "in arriving at the determination for the punishment for murder you are authorized to consider all the evidence received in court, presented by both the state and the defendant throughout the trial before you. You are authorized to consider the facts and circumstances, if any, in extenuation, mitigation, or aggravation of punishment which may have been submitted to you," as well as clearly informing the jury that if they found the defendant guilty of count number one (murder) and statutory aggravating circumstance or circumstances were found by the jury they could recommend mercy or that the defendant's punishment be life imprisonment.

When viewed in the context of the overall charge, *Spivey v. State,* supra, the trial court's charge fully and properly informed the jury that they were authorized to determine the existence of any mitigating or aggravating circumstances, and that they too were authorized to make a recommendation of mercy for the defendant, in reaching their decision on the issue of punishment. This accords with this court's decisions in *Fleming, Hawes,* and *Spivey,* supra.

Enumeration 3 is without merit.

4. In Enumeration 4, the appellant alleges: "The trial court erred in submitting to the jury two statutory aggravating circumstances."

The trial court charged the jury on three statutory aggravating circumstances. The appellant's objection is directed to the following two: "1. That the offense of murder was committed while the offender was engaged in the commission of another capital offense, to wit, armed

robbery. 2. That the offense of murder was committed while the offender was engaged in the commission of burglary."

Appellant contends that the crimes of armed robbery and burglary are lesser included offenses of the crime of murder under the facts of this case and these crimes merged into the conviction for murder; that they were "figuratively exhausted," and could not serve as statutory aggravating circumstances to predicate a recommendation of death as punishment.

In *Stanley v. State,* 240 Ga. 341 (241 SE2d 173) (1977) this court held that a second crime, such as armed robbery, may be used as an aggravating circumstance for imposition of the death penalty, and that a lesser included offense may constitute an aggravating circumstance, even though it may not be punished separately. See *Pryor v. State,* 238 Ga. 698 (234 SE2d 918) (1977). This case does not involve mutually supporting aggravating circumstances and the case of *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974) is not applicable.

Enumeration 4 is without merit.

5. In Enumeration 5, the appellant alleges: "The court below erred in refusing appellant's requested charge for a special verdict."

The appellant contends that the jury did not specify in its verdict whether they found appellant guilty of malice murder, or murder on a conspiracy theory, and there exists the possibility that appellant was found guilty on a conspiracy theory, and, if so, his resulting death sentence is disproportionate to the crime committed. We disagree. Appellant was found guilty of malice murder. He is equally guilty whether he did the actual killing or the killing was the probable consequences of the conspiracy. Whether the sentence of death is disproportionate to the crime is addressed hereafter in Division III "Sentence Review." Enumeration 5 is without merit.

6. In Enumeration 6, the appellant alleges: "The court below erred in overruling appellant's motion to declare the death penalty unconstitutional and in imposing that penalty on appellant."

This court and the Supreme Court of the United

States have upheld the constitutionality of the Georgia death penalty statute in a number of cases and the appellant has advanced no new reason for us to reconsider our position. *Coley v. State,* 231 Ga. 829 (204 SE2d 612) (1974); *Young v. State,* 237 Ga. 852, 856 (230 SE2d 287) (1976); *Moore v. State,* 240 Ga. 807, 813 (243 SE2d 1) (1978); Gregg v. Georgia, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976).

Enumeration 6 is without merit.

7. In Enumeration 7 the appellant alleges: "Under the facts of this case and the charge of the trial court to the jury, armed robbery and burglary were lesser included offenses of murder, and the convictions for same must be set aside."

We do not agree. The jury found the appellant guilty of malice murder, armed robbery, and burglary. It found the murder was committed while the appellant was engaged in the commission of armed robbery and burglary. It found also that the murder was outrageous, wanton, horrible, or inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim. It assessed the death penalty for the murder. The findings and verdicts are supported by the evidence. "Verdicts are to have a reasonable intendment and are to receive a reasonable construction, and are not to be avoided unless from necessity." Code Ann. § 27- 2301. In our opinion the verdicts of guilty, the aggravating circumstances which were found, and the imposition of the death penalty show clearly the jury determined that the appellant was a party to the crime of murder. Accordingly, the crimes of burglary and armed robbery are not included offenses. See *Potts v. State,* 241 Ga. 67, 77 (11), supra. Enumeration 7 is without merit.

8. In Enumeration 8 the appellant alleges: "The court below erred in overruling appellant's motion for a continuance on the basis of the state's last minute amendment to the list of witnesses."

After the voir dire of witnesses had been completed, the prosecution, having discovered that Dr. Smithson, whose name had been provided on the list of witnesses would not appear, presented the name of nurse Barbara Schipani as a substitute witness. Counsel for appellant

made a motion that nurse Schipani not be allowed to testify, or that the defense be granted a continuance in order to investigate the witness' proposed testimony.

The court ruled that the witness would be allowed to testify but that appellant's counsel would be given an opportunity to interrogate the witness prior to her testimony. There is no indication that the appellant moved for a mistrial and the record is silent on whether counsel did in fact interrogate her before she testified.

Code Ann. § 27-1403 provides in part: "Without the consent of the defendant, no witness shall be permitted to testify for the state whose name does not appear upon the list of witnesses as furnished to the defendant unless the solicitor or prosecuting attorney shall state in his place that the evidence sought to be presented is newly-discovered evidence which the state was not aware of at the time of its furnishing the defendant with a list of the witnesses."

The appellant's objection being made in the alternative and having been granted the opportunity to interrogate the witness before she testified, we cannot say the trial court erred. *Brown v. State,* 235 Ga. 644, 646 (220 SE2d 922) (1975); *Yeomans v. State,* 229 Ga. 488 (1) (192 SE2d 362) (1972).

Enumeration 8 is without merit.

9. In Enumeration 9, the appellant alleges: "The court below erred in excluding veniremen conscientiously opposed to the death penalty."

Appellant does not contest that the veniremen excused made it unmistakably clear that they would vote against imposition of the death penalty in any and all circumstances. Rather the thrust of his argument is that excuse of such persons without coincidental exclusions of all veniremen who might be prejudiced in favor of guilt or of capital punishment denies appellant's rights to an impartial jury and fair trial under Sixth Amendment as applicable to the states by incorporation through the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

This contention has been rejected in earlier cases by this court and the Supreme Court of the United States. *Smith v. Hopper,* 240 Ga. 93 (239 SE2d 510) (1977); *Porter*

*v. State,* 237 Ga. 580 (229 SE2d 384) (1978). Enumeration 9 is without merit.

10. In Enumeration 10 the appellant alleges: "The court below erred in allowing the state to ask certain questions concerning capital punishment to all veniremen as a group after several veniremen had been individually polled and qualified."

The appellant cites the general guidelines provided in Code Ann. §§ 59-705 and 59-809 in support of his position.

In *Whitlock v. State,* 230 Ga. 700, 706 (198 SE2d 865) (1973), this court said, "The single purpose for voir dire is the ascertainment of the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination. The control of the pursuit of such determination is within the sound legal discretion of the trial court, and only in the event of manifest abuse will it be upset upon review." Where, as here, there was an indication that the general questions had not been heard we find no abuse by the trial court in permitting questioning on matters contained in the general questions even though some veniremen had been questioned individually. *Welch v. State,* 237 Ga. 665 (229 SE2d 390) (1976); *Gatlin v. State,* 236 Ga. 707 (225 SE2d 224) (1976). Enumeration 10 is without merit.

11. In Enumeration 11 the appellant alleges: "The court below erred in allowing the jury to disperse without consent of counsel for defendant after having been sworn in as jurors," and in Enumeration 12 he alleges, "The court below erred in failing to grant a new trial after appellant showed that jurors had been allowed to disperse, that some jurors had unsupervised contacts with persons other than bailiffs and that other jurors while unsupervised had opportunities for impermissible contacts."

Code Ann. § 59-718.1 provides: "At any time during the trial of a civil or criminal case, either before or during jury deliberation, the judge may, in his discretion, allow the jury to be separated and the members thereof dispersed under appropriate instructions, except in capital cases."

It is clear from the record that the appellant did not

consent to any dispersal. The dispersal was for the purpose of securing personal items necessary for the jurors to use while being sequestered during the trial.

Violation of the quoted Code section or the possibility of an unauthorized contact or communication involving a juror, would not automatically demand that appellant be granted a new trial. In *Whitlock v. State,* supra, at pp. 701-702, this court stated: "Whenever the union and isolation of the jury have been broken, there arises a legal presumption that the defendant has been injured, and 'it (is) incumbent upon the state to have rebutted that legal presumption, not only by evidence that the juror did not speak to anyone himself, nor did anyone speak to him about the case, but that he did not hear anyone . . . express any opinion in relation to the case,' " (citing *Daniel v. State,* 56 Ga. 653, 655 (1876)).

The bailiffs testified at a post-trial hearing that they did not allow and were not aware of any authorized contact or communications involving the jurors who composed appellant's jury and every member of appellant's jury testified under oath that they never disobeyed the court's instructions that they not discuss appellant's case, allow any one to discuss it in their presence, nor did they hear anyone express any opinion in regards to appellant's case.

The state carried the burden of rebutting any presumption of harm or prejudice to the defendant.

Enumerations 11 and 12 are without merit.

12. In Enumeration 13 the appellant alleges: "During the trial, jurors were allowed to view appellant in handcuffs outside the courtroom. The court below erred in overruling a motion for new trial made on this ground."

It appears to be uncontested that two or three jurors inadvertently noticed the appellant entering the sheriff's automobile while handcuffed, during a recess at some point during the trial. The jurors testified during the hearing on the appellant's motion for a new trial that they were not prejudiced against appellant, that their deliberations in the case were not affected in any way by what they saw.

There was no exhibiting of the accused in chains to the court and the incident does not appear to have been of

such significance as to be noted during the course of the trial. Under these circumstances, the cases cited by the appellant in support of his contention, Estelle v. Williams, 425 U. S. 501 (96 SC 1691, 48 LE2d 126), reh. den. 426 U. S. 954 (96 SC 3182, 49 LE2d 1194) (1976), and *McKenzey v. State,* 138 Ga. App. 88 (225 SE2d 512) (1976) have no application. Enumeration 13 is without merit.

13. In Enumeration 14, the appellant alleges: "The court below erred in sustaining an objection by the state to certain questions asked of Milledgeville Police Officer Ralph Starley."

State's witness Ralph Starley, a police officer, testified on direct examination that upon arrival at the victim's residence, he and other officers proceeded cautiously around the house before breaking in to help Mr. Hill because they believed a burglar might still be in the house. He stated on cross examination that Marvin Jones, a neighbor, had seen "subjects" entering the premises. Counsel for appellant attempted to ask further questions regarding this statement of Marvin Jones in order to discover the reason behind the witness' belief that one of the subjects might still be in the house. The court sustained the objection on the ground that the statement of Marvin Jones would be hearsay.

This court has consistently held in accord with the trial court's ruling. As early as *Kelly v. State,* 82 Ga. 441 (1887), this court addressed the issue of the admissibility of a conversation of a witness with a third person, where the purpose of proving the conversation is merely to show inducement, or conduct: ". . . we think it would have been more regular to admit only the fact that a conversation occurred, without going into the particulars of what was said. The fact itself was all that was needed to show inducement, and certainly the conversation was not admissible for any other purpose." Accord, *McNeal v. State,* 228 Ga. 633, 637 (187 SE2d 271) (1972); *Lingo v. State,* 226 Ga. 496, 498 (175 SE2d 657) (1970).

Marvin Jones appeared and testified at appellant's trial but the appellant did not question him on this point.

Enumeration 14 is without merit.

14. In Enumeration 15 the appellant alleges: "The court below erred in refusing appellant's motion at trial

for discovery of written statements of Marvin Jones, a key witness of the prosecution."

At no point in the trial does it appear that there was indeed a written statement of Marvin Jones. At most it appears that a police summary may have made some reference to Jones' statements to the police. At issue appears to be the question of whether Jones told the police that there were "suspects" rather than "a suspect" in the house where the crime occurred and whether he said he saw a person leave the house before the appellant left.

In *Dickey v. State*, 240 Ga. 634, 636 (242 SE2d 55) (1978) this court said: "A defendant assigning error upon the denial of a 'Brady motion' must do more than show suppression. Moore v. Illinois, 408 U. S. 786, 795-798 (92 SC 2562, 33 LE2d 706) (1972); *Hicks v. State*, 232 Ga. 393, 396 (207 SE2d 30) (1974); *Pryor v. State*, 238 Ga. 698, 706 (234 SE2d 918) (1977). See United States v. Harris, 458 F2d 670, 677 (5th Cir., 1972); United States v. Crow Dog, 532 F2d 1182, 1189 (8th Cir., 1976). A defendant assigning error upon the denial of a 'Brady motion' and suppression of an inconsistent statement by a key prosecution witness must show that '. . . the suppressed evidence might have affected the outcome of the trial.' United States v. Agurs, 427 U. S. 97 (96 SC 2392, 49 LE2d 342) (1976)."

The Agurs case established "[i]f there is no reasonable doubt about guilt, whether or not the additional evidence is considered, there is no justification for a new trial."

In the instant case the evidence is overwhelming that the appellant was in the victim's house and in possession of the victim's property. Under these circumstances we find no justification for a new trial on this issue. Enumeration 15 is without merit.

15. In Enumeration 16, the appellant alleges: "The trial court erred in requiring the District Attorney to make a statement to the jury revealing any alleged agreement with state's witness Roger Loring Horne, and thereafter allowing the District Attorney to make a prejudicial statement to the jury concerning his inability to find evidence linking Horne to the crimes of which appellant was accused rather than making the required

statement."

We note at the outset that the appellant made no objection at trial to the statement by the district attorney. In fact, although the district attorney and counsel for Horne both asserted no promise had been made to Horne, the appellant's counsel insisted that the statement by the district attorney clearly showed the existence of an agreement made in exchange for Horne's testimony with the following argument:

"Mr. Dickens: Your Honor, of course, what has been said here clearly indicates this. That the district attorney has, in effect, indicated to Horne through his attorney that if all goes well in this trial from the state's standpoint, he won't be tried. His case will be nol prossed. If that isn't a promise, if that isn't an inducement, there has never been an inducement made in the whole country."

Under these circumstances it was proper for the district attorney to repeat the statement. Not only will the failure to interpose a timely objection at trial preclude consideration of an objection raised for the first time on appeal (*Clenney v. State,* 229 Ga. 561, 563 (192 SE2d 907) (1972)), but "A defendant will not be allowed to induce an asserted error, sit silently by hoping for an acquittal, and obtain a new trial when that tactic fails." *Hill v. State,* 237 Ga. 523 (228 SE2d 898 (1976); *Edwards v. State,* 235 Ga. 603, 604 (221 SE2d 28) (1975).

Enumeration 16 is without merit.

16. In Enumeration 17 the appellant alleges: "The court erred in sustaining the state's objection to the appellant's attempt to impeach co-indictee Roger Horne, through the use of statements made in connection with a polygraph examination," and in Enumeration 18, that "The court below erred in sustaining the state's objection to appellant's questions to co-indictee Roger Horne which tended to show Horne's unreliability by virtue of the results of a polygraph examination."

In *State v. Chambers,* 240 Ga. 76 (239 SE2d 324) (1977) this court held on express stipulation by the parties, the results of a polygraph examination may be admitted into evidence. There was no stipulation of the parties in this case and the appellant abandoned the issue

when left open by the trial court saying, "Your Honor, insofar as the defendant is concerned, we are not pursuing that subject."

Enumerations 17 and 18 are without merit.

17. In Enumeration 19 the appellant alleges: "The court below erred in instructing the jury on the admissibility of evidence concerning serological tests."

The state failed to connect up with a complete chain of custody blood samples taken from the victim, the appellant and Roger Horne. There was also testimony that blood was of human origin and the type of the same on the clothing, shoes, stick, crowbar, and any other specific objects delivered to the Crime Lab, either found in the home of George W. Hill, Sr., or in the custody of the defendant and submitted to the State Crime Lab for examination. The court ruled out and instructed the jury to disregard the tests where the state had failed to connect up with a chain of custody and permitted consideration of the tests on the clothing, shoes, stick, crowbar, and other specific objects delivered to the Crime Lab, either found in the home of George W. Hill, Sr., or in the custody of the defendant and submitted to the State Crime Lab for examination.

It was material and relevant in each instance that the blood was human blood. Although the types may have been of no significance, it was important that they were typable as human blood and that they did or did not come from the same person.

The cautionary charge of the court, repeated in the final charge was proper. Additionally, the appellant has not demonstrated any harm or prejudice to himself. *Chenault v. State,* 234 Ga. 216, 220 (215 SE2d 223) (1975).

Enumeration 19 is without merit.

18. In Enumeration 20, the appellant alleges: "The trial court improperly denied appellant a twenty-four hour continuance in order to investigate the possibility of another cause of death of the victim."

The request for a continuance was withdrawn by appellant's counsel at trial and this enumeration is without merit.

19. In Enumeration 21, the appellant alleges: "The court below erred in denying appellant's motion for a

directed verdict made on the ground that the state failed to prove that appellant caused the death of George Hill, the alleged victim named in the indictment."

The evidence was sufficient to support a verdict, and it was not error for the trial court to refuse to direct a verdict of acquittal. *Stamper v. State,* 235 Ga. 165, 170 (219 SE2d 140) (1975); *Cunningham v. State,* 235 Ga. 126 (218 SE2d 854) (1975).

20. In Enumeration 22, the appellant alleges: "The court below erred in sustaining the state's objection to the introduction of a full transcript of appellant's statement to police, parts of the statement having been previously used by the prosecution for the purpose of impeachment."

The trial court ruled, "And for the purposes of the record, I would like to state that the court is not preventing you from going into the exact detail with this defendant as to what statement, if any, he made in Tampa. I'm simply stating that I am not admitting the instrument into evidence."

Appellant argues in his brief, "It is well settled ' . . . that where an effort is made to impeach a witness by proving contradictory statements made in a conversation which occurred previously to the trial, it is competent to sustain the witness by bringing out the whole of that conversation, in order that the true drift and meaning of what was then said by him may be correctly understood.' *Lowe v. State,* 97 Ga. 792, 794 (25 SE 676) (1895); *Smalls v. State,* 105 Ga. 669 (31 SE 571) (1898);*Parrish v. State,* 88 Ga. App. 881 (78 SE 366) (1953). In *Parrish,* supra, at p. 882, the Court of Appeals, reviewing the admissibility of a statement made by the defendant at the time of his arrest, states: 'If it was not the entire conversation which took place, or did not embody the entire substance of the previous oral declarations, the State was not required to show *verbatim* all that transpired, but the defendant was at liberty to do so if he desired.' "

It is clear that the trial court was permitting a *verbatim* showing by instructing appellant's counsel that "the court is not preventing you from going into the *exact* detail with this defendant as to what statement if any, he

made in Tampa."

Enumeration 22 is without merit.

21. In Enumeration 23, the appellant alleges: "The trial court erred in denying appellant's motion for a new trial."

In support of this enumeration the appellant asserts the general grounds and urges in support thereof the prior enumerations and the arguments made.

We do not find that the trial court erred in any manner enumerated and did not err in denying appellant's motion for a new trial on the general grounds.

Appellant's other enumerations alleging that the death penalty was imposed under influence of passion, prejudice and other arbitrary factors and the sentence of death is excessive or disproportionate to the penalty imposed in similar cases considering the crime and the defendant are matters that will be considered in our review of the death sentence.

### III. Sentence Review.

Our sentence review has included consideration of the aggravating circumstances found by the jury and the evidence introduced in court concerning the crime and the defendant. After a review of the record and transcript, we conclude that the sentence of death imposed on Andrew P. Legare was not imposed under the influence of passion, prejudice or any other arbitrary factor. Code Ann. § 27-2537 (c) (1).

1. The offense of murder was committed while the offender was engaged in the commission of another capital offense, to wit, armed robbery. Code Ann. § 27-2534.1 (b) (2).

2. That the offense of murder was committed while the offender was engaged in the commission of a burglary. Code Ann. § 27-2534.1 (b) (2).

3. The offense of murder was outrageously and wantonly vile, horrible or inhumane in that it involved torture, depravity of mind, or an aggravated battery to the victim. Code Ann. § 27-2534.1 (b) (7).

We have reviewed the instructions given by the trial court on sentencing and find that they are not subject to the defects addressed in *Fleming v. State,* supra, and *Hawes v. State,* supra.

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed for murder, and we find the cases listed in the appendix support affirmance of the death penalty.

There is evidence to establish that the appellant broke into the victim's home, ransacked it, and lay in wait for the victim's return, then brutally beat him to death, took his automobile and made his getaway.

Andrew Legare's sentence to death for murder is not excessive or disproportionate considering both the crime and the defendant. Code Ann. § 27-2537 (c)(3). The verdict is factually supported.

*Judgment affirmed. All the Justices concur.*

ARGUED FEBRUARY 20, 1979 — DECIDED MAY 31, 1979 — REHEARING DENIED JUNE 22, 1979.

*G. L. Dickens, Jr.,* for appellant.

*Joseph H. Briley, District Attorney, Arthur K. Bolton, Attorney General, William B. Hill, Jr., Staff Assistant Attorney General,* for appellee.

APPENDIX.

*House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Chenault v. State,* 234 Ga. 216 (215 SE2d 223) (1975); *Smith v. State,* 236 Ga. 12 (222 SE2d 308) (1976); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976); *Isaacs v. State,* 237 Ga. 105 (226 SE2d 922) (1976); *Dungee v. State,* 237 Ga. 218 (227 SE2d 746) (1976); *Banks v. State,* 237 Ga. 325 (227 SE2d 380) (1976); *Young v. State,* 239 Ga. 53 (236 SE2d 1) (1977); *Gaddis v. State,* 239 Ga. 238 (236 SE2d 594) (1977); *Peek v. State,* 239 Ga. 422 (238 SE2d 12) (1977); *Bowden v. State,* 239 Ga. 821 (238 SE2d 905) (1977); *Westbrook v. State,* 242 Ga. 151 (249 SE2d 524) (1978); *Finney v. State,* 242 Ga. 582 (250 SE2d 388) (1978); *Davis v. State,* 242 Ga. 901 (242 SE2d 443) (1979); *Spraggins v. State,* 243 Ga. 73 (252

SE2d 620) (1979).